# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

———————————

UNITED STATES,

Plaintiff-Appellant,

v.

AEGIS SECURITY INSURANCE CO.,

Defendant-Appellee.

———————————

On Appeal from the United States Court of International Trade
in Case No. 22-00327, Judge Jane A. Restani

———————————

## BRIEF FOR PLAINTIFF-APPELLANT
———————————

*Of Counsel:*

SUZANNA HARTZELL-BALLARD
  *Office of Assistant Chief Counsel*
  *U.S. Customs and Border Protection*

BRETT A. SHUMATE
  *Assistant Attorney General*

PATRICIA M. McCARTHY
  *Director*

JUSTIN R. MILLER
  *Attorney-In-Charge*
  *International Trade Field Office*

BEVERLY A. FARRELL
  *Senior Trial Attorney*
  *Civil Division, Suite 346*
  *U.S. Department of Justice*
  *26 Federal Plaza*
  *New York, New York 10278*
  *(212) 264-9230*

Dated: January 26, 2026

## STATEMENT OF RELATED CASES

No other appeal in or from the present civil action has previously been before this or any other appellate court. The Government believes that the following actions may be directly affected by this Court's decision within the meaning of Federal Circuit Rule 47.5(b):

1. *United States v. Aegis Security Insurance Co.*, Court No. 25-00051 (Ct. Int'l Trade); and

2. *United States v. XL Specialty Insurance Co.*, Court No. 25-00154 (Ct. Int'l Trade).

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................... 1

STATEMENT OF JURISDICTION ............................................................... 2

STATEMENT OF ISSUES .............................................................................. 2

STATEMENT OF THE CASE ........................................................................ 3

    I.      Statutory And Regulatory Background ...................................... 3

    A. The Process For Collecting On A Customs Bond ....................... 3

    B. The Surety's Obligations ................................................................ 4

    II.     Factual Background ..................................................................... 5

    A. The Merchandise Covered By Aegis's STB Is Subject To Antidumping Duties ......................................................................... 5

    B. Suspension Of Liquidation Ends .................................................. 7

    C. CBP's Bills And Demands For Payment ...................................... 8

    III.    Prior Proceedings ....................................................................... 9

SUMMARY OF THE ARGUMENT ............................................................ 13

ARGUMENT .................................................................................................. 15

I.    Standard Of Review ............................................................................ 15

II.    The Trade Court Erred As A Matter Of Law In Holding That The Government's Cause Of Action Is Time-Barred Because It Accrued At Liquidation ......................................................................................... 15

    A. The STB required a demand for payment ................................. 15

B. The statutory, regulatory, and contractual framework supports our position that a demand for payment is necessary for the accrual of the Government's claim ................................................................................................................ 20

III. The Trade Court Erred As A Matter Of Law In Holding That The Government Breached The Bond Contract By Failing To Issue The Demand In A Reasonable Time ............................................................................................. 25

CONCLUSION ................................................................................................................ 31

# TABLE OF AUTHORITIES

## Cases

*Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Ca., Inc.*,
    522 U.S. 192 (1997) ........................................................................................ 16

*Centex Corp. v. United States*,
    395 F.3d 1283 (Fed. Cir. 2005) ...................................................................... 26

*Chevron U.S.A. v. United States*,
    923 F.2d 830 (Fed. Cir. 1991) ........................................................................ 16

*Clark v. Iowa City*,
    20 Wall. 583 (1875) ......................................................................................... 16

*Dobyns v. United States*,
    915 F.3d 733 (Fed. Cir. 2019) ..............................................................2, 14, 29

*Fujitsu Gen. Am., Inc. v. United States*,
    283 F.3d 1364 (Fed. Cir. 2002) ........................................................................ 7

*Metcalf Constr. Co. v. United States*,
    742 F.3d 984 (Fed. Cir. 2014) .............................................................. 14, 25, 26

*Medline Indus., Inc. v. United States*,
    62 F.3d 1407 (Fed. Cir. 1995) ........................................................................ 15

*Nat'l Fisheries Inst., Inc. v. U. S. Bureau of Customs & Border Prot.*,
    465 F. Supp. 2d 1300 (Ct. Int'l Trade 2006) ................................................... 1

*Nyhus v. Travel Management Corp.*,
    466 F.2d 440 (D.C. Cir. 1972) ................................................................. 29, 30

*Old Republic Ins. Co. v. United States*,
    645 F. Supp. 943 (Ct. Int'l Trade 1986)..……………………………………28

*Rawlings v. Ray*,
    312 U.S. 96 (1941) .......................................................................................... 16

*Rheem Matalurgica S/A. v. United States,*
   160 F.3d 1357 (Fed. Cir. 1998) ...................................................................7-8

*Precision Pine & Time, Inc. v. United States,*
   596 F.3d 817 (Fed. Cir. 2010) ……………………………………2, 25, 26, 27

*United States v. Aegis Sec. Ins. Co.,*
   693 F. Supp. 3d 1328 (Ct. Int'l Trade 2024)..................................... 12, 19, 29

*United States v. American Home Assurance Co.,*
   857 F.3d 1329 (Fed. Cir. 2017)................................... 4, 14, 15, 19, 23-24

*United States v. Cocoa Berkau, Inc.,*
   990 F.2d 610 (Fed. Cir. 1993) ................................... 15-16, 17, 18, 24

*United States v. Commodities Export Co.,*
   972 F.2d 1266 (Fed. Cir. 1992) ..................................................... 16

*United States v. De Visser,*
   10 F. 642 (S.D.N.Y. 1882)............................................................... 28

*United States v. Ins. Co. of N. Am.,*
   83 F.3d 1507 (D.C. Cir. 1996) ...................................................19-20

*United States v. Reul,*
   959 F.2d 1572 (Fed. Cir. 1992) ...................................................... 24

*United States v. Washington Int'l Ins. Co.,*
   177 F. Supp. 2d 1313 (Ct. Int'l Trade 2001).................................... 4

*Wuhan Bee Healthy Co. v. United States,*
   32 C.I.T. 604 (2008) ...................................................................... 7

*Wuhan Bee Healthy Co. v. United States,*
   31 C.I.T. 1182 (2007) .................................................................... 6

## Statutes and Regulations

19 U.S.C. § 580..............................................................10, 13, 14, 23, 24

19 U.S.C. § 1501 ........................................................................... 9

19 U.S.C. § 1504(d) ................................................................ 7

19 U.S.C. § 1505(b) ............................................................ *passim*

19 U.S.C. § 1505(d) ..................................................9, 10, 13, 22, 24

19 U.S.C. § 1508 ................................................................ 28

19 U.S.C. § 1514 ............................................................. 4, 23

19 U.S.C. § 1514(a) ............................................................. 4

19 U.S.C. § 1514(c)(3) ...........................................4, 13-14, 22, 23, 28

19 U.S.C. § 1515(a) ............................................................. 4

19 U.S.C. § 1673 ............................................................... 4

19 U.S.C. § 1961 .............................................................. 10

28 U.S.C. § 1295(a)(5) .......................................................... 2

28 U.S.C. § 1581(a) ............................................................ 4

28 U.S.C. § 1582(2) ....................................................1, 2, 9, 19, 21

28 U.S.C. § 1582(3) ........................................................... 19

28 U.S.C. § 2415(a) .......................................................... *passim*

19 C.F.R. § 24.3a .........................................................13, 22

19 C.F.R. § 24.3a(a) .................................................20, 21, 22, 27-28

19 C.F.R. § 24.3a(d)(1)-(2) ...........................................3, 20-21

19 C.F.R. § 24.3(e) .......................................................21, 22

19 C.F.R. § 113.62 .......................................................16, 24

19 C.F.R. § 113.62(a)(1) ...................................................................... 13, 16

19 C.F.R. § 113.62(a)(1)(ii) ................................... 3, 4, 5, 10, 18-19, 28

19 C.F.R. § 141.1 ................................................................................. 4, 19

19 C.F.R. § 159.9(c)(2)(ii) ....................................................................... 28

## Other Authorities

23 Williston on Contracts § 63.22 (4th ed. 2025) ...................................... 25, 27

*Honey From the People's Republic of China*, 66 Fed. Reg. 63,670
(Dep't of Commerce Dec. 10, 2001) ......................................................... 1

*Honey From the People's Republic of China*, 69 Fed. Reg. 77,184
(Dep't of Commerce Dec. 27, 2004) ......................................................... 5

*Honey From the People's Republic of China*, 70 Fed. Reg. 38,873
(Dep't of Commerce July 6, 2005) ........................................................... 6

*Honey From the People's Republic of China*, 73 Fed. Reg. 54,366
(Dep't of Commerce Sept. 19, 2008) ........................................................ 7

# INTRODUCTION

After Aegis Security Insurance Company (Aegis), a customs bond surety, failed to satisfy CBP's demand for payment under a single transaction bond (STB),[1] the Government filed an action pursuant to 28 U.S.C. § 1582(2) to recover liquidated antidumping duties and pre- and post-judgment interest. The STB had secured the importation of a single entry of honey by importer Presstek Wood Technologies Inc. (Presstek) from China. Appx3. The entry was subject to the antidumping duty order covering honey from China. *See Honey From the People's Republic of China*, 66 Fed. Reg. 63,670 (Dep't of Commerce Dec. 10, 2001) (antidumping duty order). Appx3.

The trial court held that: (i) the Government's bond claim was time-barred because its claim accrued at liquidation; and (ii) the Government could not recover under the bond because it failed to issue its demand under the bond contract in a reasonable time. For the reasons discussed below, the trial court erred as a matter of law on both points.

Absent reversal of the trial court's opinion, not only will an incorrect pronouncement of the law persist and continue to be applied by the Court of International Trade (the Trade Court), but that error will truncate the Government's collection rights by denying it the full amount of time provided by 28 U.S.C. § 2415(a)

---

[1] A single transaction bond covers the obligations arising from one entry of merchandise. *See Nat'l Fisheries Inst., Inc. v. U.S. Bureau of Customs & Border Prot.*, 465 F. Supp. 2d 1300, 1302 (Ct. Int'l Trade 2006).

to commence an action against a surety. Further, the trial court's imposition of a "reasonable time" condition into the bond contract adds a standard not required by the pertinent statutes or regulations and is inconsistent with binding authority holding that "'[t]he implied duty of good faith and fair dealing cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions.'" *Dobyns v. United States*, 915 F.3d 733, 739 (Fed. Cir. 2019)(quoting *Precision Pine & Time, Inc. v. United States*, 596 F.3d 817, 831 (Fed. Cir. 2010)).

## STATEMENT OF JURISDICTION

The United States (the Government) invoked the jurisdiction of the Court of International Trade (Trade Court) under 28 U.S.C. § 1582(2).[2] Appx5. The Trade Court entered final judgment on June 11, 2025. Appx1. The United States timely appealed. Appx20. This Court has jurisdiction under 28 U.S.C. § 1295(a)(5).

## STATEMENT OF THE ISSUES

1.      Whether the trial court erred in holding that the Government's claims to recover $100,700.00 plus interest for Aegis Security Insurance Company's (Aegis)

---

[2] Section 1582(2) provides in pertinent part:

> The Court of International Trade shall have exclusive jurisdiction of any civil action which arises out of an import transaction and which is commenced by the United States—

> (2) to recover upon a bond relating to the importation of merchandise required by the laws of the United States or by the Secretary of the Treasury.

2

breach of a single transaction bond covering antidumping duties owed on one entry of honey imported from the People's Republic of China were time-barred under 19 U.S.C. § 2415(a) because the Government's cause of action against Aegis had accrued at liquidation rather than when Aegis had defaulted on the demand for payment or, in the alternative and at the earliest, within six years of the November 25, 2016 bill to the importer.

2.      Whether the trial court erred in holding that the government had breached an implied condition of the bond contract by failing to issue the demand for payment from the surety within a "reasonable" time where neither the bond contract nor any applicable statutory provisions contain such a condition.

## STATEMENT OF THE CASE

## I.      STATUTORY AND REGULATORY BACKGROUND

### A.      The Process For Collecting On A Customs Bond

To collect on a bond, U.S. Customs and Border Protection (CBP) liquidates an entry and issues a bill to the importer under 19 U.S.C. § 1505(b) and 19 C.F.R. § 24.3a(d)(1)–(2).  If the importer fails to make payment within 30 days of the bill's issuance, CBP makes a demand on the surety for payment under the bond.  The necessity of a demand on the surety is required by 19 C.F.R. § 113.62(a)(1)(ii), a term incorporated by reference in the bond.  The surety, like the importer, then has 30 days to make payment.

Both the importer and surety have 180 days after CBP's respective bill or demand for payment to file a protest contesting the liquidation. 19 U.S.C. § 1514(c)(3). If no protest is filed, then the liquidation becomes final and conclusive. 19 U.S.C. § 1514. Further, without first filing a protest, neither the importer nor the surety may commence an action in the Trade Court to dispute CBP's bill or payment demand. *See* 28 U.S.C. § 1581(a); 19 U.S.C. §§ 1514(a) and 1515(a).

## B. The Surety's Obligations

An importer is required to pay the antidumping duties assessed by the United States pursuant to 19 U.S.C. § 1673. *See also* 19 C.F.R. § 141.1. A surety who underwrites a customs bond agrees to be jointly and severally liable for any duties, taxes, fees, and charges owed by the importer up to the limit of liability on the face of the bond. *See United States v. American Home Assurance Co.*, 857 F.3d 1329, 1335-1337 (Fed. Cir. 2017) (limitation to face of the bond and conditions of 19 C.F.R. § 113.62(a)(1)(ii)); *United States v. Washington Int'l Ins. Co.*, 177 F. Supp. 2d 1313, 1316 (Ct. Int'l Trade 2001) ("Normally, a surety is liable for any duties, fees, and interest owed up to the face amount of the surety bond.").

This obligation arises pursuant to the terms of the bond and CBP's regulations. The contractual terms of the bond provide that "[i]n order to secure payment of any duty, tax or charge and compliance with law or regulations as a result of activity covered by any condition referenced below, we, the below named principal(s) and surety(ies), bind ourselves to the United States in the amount or amounts, as set forth

below." Appx726. Furthermore, the requirements of 19 C.F.R. § 113.62(a)(1)(ii) are also incorporated into the terms of the bond. *Id.* ("Principal and surety agree that they are bound to the same extent as if they executed a separate bond *covering each set of conditions incorporated by reference to the Customs Regulations into this bond.*") (emphasis added). 19 C.F.R. § 113.62(a)(1)(ii) provides that "the obligors (principal and surety, jointly and severally) agree to: Pay, as demanded by CBP, all additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on any entry secured by this bond."

## II. FACTUAL BACKGROUND

### A. The Merchandise Covered By Aegis's STB Is Subject To Antidumping Duties

In December 2003, the domestic honey industry had requested an administrative review of the honey antidumping duty order for 20 Chinese producers/exporters, including Wuhan Bee. 69 Fed. Reg. 77,184 (Dep't of Commerce Dec. 27, 2004). Wuhan Bee had also asked Commerce to conduct a review of its entries during the period of review and assign it a separate company-specific rate. *See id.* Upon initiation of this administrative review, liquidation of the entries covered by the administrative review, including the entry at issue, was suspended.

On December 27, 2004, Commerce issued its preliminary results and preliminarily determined an antidumping duty margin of 5.69 percent for Wuhan Bee

and a China-wide margin of 183.80 percent. *Id.* Commerce had calculated the

preliminarily margin for Wuhan Bee, in part, on Wuhan's representation that it was

affiliated with Presstek, Pure Sweet Honey Farm Inc. and Pure Food Ingredients Inc.

But Commerce later found certain discrepancies with Wuhan Bee's purported date on

which it had become affiliated with Presstek and the valuation of certain sales made

by Wuhan Bee. *See* 70 Fed. Reg. 38,873 (Dep't of Commerce July 6, 2005). Because it

ultimately found that Wuhan Bee had failed to cooperate to the best of its ability in

the review, Commerce used an adverse inference against Wuhan when selecting

among the facts available, to determine the final rate. On July 6, 2005, Commerce

published the final results of its review calculating antidumping margins of 101.51

percent for entries exported by Wuhan Bee and 183.80 percent China-wide. *Id.*

Wuhan Bee and Presstek challenged Wuhan Bee's margin in the Trade Court

and on July 27, 2005, the Trade Court preliminarily enjoined liquidation of Wuhan

Bee's entries for the subject period of review. *Wuhan Bee Healthy Co., Ltd v. United

States,* Court No. 05-00438. Two years later, on July 20, 2007, the Trade Court

sustained Commerce's final results in part and remanded the case to Commerce for

further action. *Wuhan Bee Healthy Co. v. United States*, 31 C.I.T. 1182 (2007). After

Commerce issued its remand results, the Trade Court sustained the remand results on May 29, 2008.  *Wuhan Bee Healthy Co. v. United States*, 32 C.I.T. 604 (2008).[3]

### B.      Suspension Of Liquidation Ends

On January 27, 2009, Commerce instructed CBP that the injunction for entries of honey from China by exporter Wuhan Bee had dissolved on July 28, 2008, and that notice of lifting of suspension of liquidation had occurred through publication of Commerce's amended final results on September 19, 2008.  The message also specified that the antidumping duty rate for subject entries exported by Wuhan Bee was $1.68 per kilogram.

Because CBP did not liquidate the entry within six months of the publication of Commerce's amended final results, the entry at issue liquidated by operation of law on March 19, 2009, at the entered rates.  *Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1380-82 (Fed. Cir. 2002); 19 U.S.C. § 1504(d) ("[a]ny entry . . . not liquidated by [CBP] within 6 months after receiving [notice of the removal of suspension from Commerce] shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry . . . .").  Because Presstek had posted an STB in lieu of a cash deposit of estimated antidumping duties at the

---

[3] On September 19, 2008, Commerce published amended final results calculating Wuhan Bee's company-specific antidumping margin as 101.48 percent. 73 Fed. Reg. 54,366 (Dep't of Commerce Sept. 19, 2008).  This margin differed from the 101.51 percent margin in the original final results because Commerce applied a recalculated surrogate value for labor in the normal value calculation.  *Id.*

time of entry, the rate and quantity used for calculating the STB amount were the rate and quantity that the entry liquidated at by operation of law. *See Rheem Metalurgica S/A v. United States*, 160 F.3d 1357, 1359 (Fed. Cir. 1998) (holding, in the context of deemed liquidations of entries secured by STBs, "under § 1504(d) the duty rates to apply are those used to calculate the value of the bonds that were posted by [the importer] when the entries were made"). Consequently, the duties owed on the entry, as a result of the deemed liquidation, were $100,634.18 ($54,752 entered value x 1.838 deposit rate at time of entry =$100,634.18). This total duty calculation is covered by the STB amount of $100,700.

## C. CBP's Bills And Demands For Payment

After becoming aware of the deemed liquidation of this entry, CBP entered a "no change" liquidation in its system on September 30, 2016, which was the process used at that time to generate a bulletin notice of the deemed liquidation. On November 25, 2016, CBP attempted to reliquidate the entry and issued the first bill to the importer for the entry, bill number 47261051, for $57,489.60. Appx5. Presstek did not pay this bill. CBP then sent its first "Formal Demand on Surety for Payment of Delinquent Amounts Due" (the 612 Report) to Aegis beginning with the January 2017 report, which was mailed on or around February 6, 2017. Appx5. Billing continued via Aegis's 612 Report monthly thereafter.

On April 25, 2017, Aegis filed a protest arguing that: (1) the entry had liquidated by operation of law; (2) collection was barred by the six-year statute of

limitations that had commenced on the deemed liquidation date; and (3) CBP had no authority to voluntarily reliquidate the entry under 19 U.S.C. § 1501. Appx5. On May 14, 2019, CBP denied the protest in part, but agreed with Aegis that CBP did not have the authority to reliquidate the entry and concluded that a new bill should be issued reflecting the amounts declared at entry along with applicable interest under 19 U.S.C. § 1505(d). Appx5.

Consistent with the protest decision and to effectuate the deemed liquidation, CBP performed a reliquidation in its system on March 15, 2019, to issue a revised bill for the entry, bill number 47872057. Appx5. The duty amount calculated for this bill corresponds correctly to the entry's deemed liquidated duty amount (*i.e.*, a duty amount owed of $100,634.18) but included an incorrect interest amount resulting in a bill for $202,890.54. Presstek did not protest this bill or make payment. Appx5. CBP sent formal demands for payment to Aegis for bill number 47872057 via the 612 Report. Appx5. Aegis did not protest the incorrect bill amount on the 612 Report and, after Aegis failed to pay, the Government commenced this collection action. Appx5.

## III.  PRIOR PROCEEDINGS

On November 22, 2022, the Government filed suit against Aegis pursuant to 28 U.S.C. § 1582(2) to recover on the STB that had secured Presstek's importation of a single entry of honey. The Government cross-moved for summary judgment, seeking unpaid duties of $100,700.00, *i.e.*, the contractual limit of the applicable bond,

which comprised outstanding liquidated duties ($100,634.18) and interest ($65.82) pursuant to 19 U.S.C. § 1505(d). The Government further sought pre-judgment interest pursuant to 19 U.S.C. § 580,[4] equitable interest, and post-judgment interest pursuant to 28 U.S.C. § 1961. Aegis argued that it should be granted summary judgment because the Government's claims were barred by the applicable six-year statute of limitations of section 2415(a) and because CBP had unreasonably delayed in issuing Aegis a demand for payment on the bond. *See* Appx2-3.

The Trade Court turned first to Aegis's argument that the Government had failed to demand payment in a reasonable time, thus breaching the bond contract and eliminating Aegis's obligation to make any payment under the bond. Appx5-6. The court acknowledged that the subject bond incorporated language from 19 C.F.R. § 113.62(a)(1)(ii), which requires the surety to pay as demanded by CBP all additional duties, taxes, and charges imposed on any entry secured by the bond and that this provision had no express limitation on the time for demand. Notwithstanding these express terms, the Trade Court held that the bond is governed by the implied duty of good faith and fair dealing that imposed a reasonable time condition on the demand for payment from the surety. Appx7.

---

[4] Section 580 provides that "[u]pon all bonds, on which suits are brought for the recovery of duties, interest shall be allowed, at the rate of 6 per centum a year, from the time when said bonds became due."

The proceedings show that, after the entry had liquidated by operation of law on March 19, 2009, CBP issued a bill to the importer on November 25, 2016. Appx8. When the importer did not pay its outstanding obligation, CBP made a demand on Aegis on February 6, 2017. Appx8. Aegis protested the demand on April 25, 2017, which CBP granted in part. Appx8. The Trade Court noted that almost eight years had passed before the first demand had been made on Aegis and that ten years had passed before CBP issued its post-protest demand to Aegis. Appx8. CBP had delayed in issuing the November 2016 bill to the importer because it had lost or misfiled the entry papers, not as the result of any action by Aegis. Appx8-9.

The court concluded that "[b]y not making a timely demand, Customs failed to act diligently and allowed the contract to fall into no man's land where the parties' expectation could be thwarted easily." Appx7. Thus, "Customs must issue the demand in a reasonable time." Appx8. The Trade Court determined that the nearly eight-year delay in issuing the first demand is unreasonable and violated the duty of good faith and fair dealing. Appx9. As a result, the court held that the Government breached the bond contract and could not recover under that contract. Appx9.

Next, the Trade Court considered Aegis's defense that the government's action was time-barred because it was filed more than six years after the claim had accrued, *i.e.*, the date of the deemed liquidation of the entries. Appx9-13. The court noted that the six-year limitations period in section 2415(a) applied to customs bond contracts and that "[a] cause of action accrued when all events necessary to state a

claim have occurred." Appx10. The Government contended that the statute of limitations for its breach of contract claim against Aegis had begun to run 30 days after Aegis had failed to pay as demanded by CBP or, alternatively, at the earliest from the date it had issued a bill to the importer. Appx9-10.

Aegis countered that the statute of limitations ran from the date of liquidation or, at the latest, 30 days after liquidation. Appx9. Prior to this action, the Government had commenced a collection action against Aegis in connection with a different importer who had failed to pay its duty obligations. *United States v. Aegis Sec. Ins. Co.*, 693 F. Supp. 3d 1328 (Ct. Int'l Trade 2024) (*Aegis 3628*). Although acknowledging that the court in *Aegis 3628* had concluded that the statute of limitations runs from the date of the bill required by 19 U.S.C. § 1505(b), the court disagreed. Appx10-11. Instead, holding that *Aegis 3628* runs contrary to congressional intent reflected in the revisions to section 1505(b), the trial court concluded that Congress had intended the limitations period of section 2415(a) to run from liquidation. Appx11. The court further noted that the text of 1505(d) supports the inference. Appx12.

The Trade Court concluded that all the necessary events for the Government to state a claim had occurred at liquidation, held that the government's claim on the Aegis bond was time-barred, and granted summary judgment to Aegis.

The Government timely appealed the Trade Court's judgment.

## SUMMARY OF ARGUMENT

The Trade Court erred as a matter of law when holding that the six-year statute

of limitations runs at liquidation rather than when the surety fails to comply with the

Government's demand for payment under the bond.  This holding contravenes the

plain language of 19 U.S.C. §§ 580, 1505(b), 1514(c)(3); 19 C.F.R. §§ 113.62(a)(1),

24.3a; the terms of the bond contract; and effectively manufactures a statute of repose

where none exists.  Taken to its logical end, under the Trade Court's analysis, the

Government could file a collection action immediately after liquidation without ever

submitting a bill to the importer or making a demand on the bond surety should the

importer not pay.  This plainly contradicts the express language of section 1505(b)

("[d]uties, fees, and interest determined to be due upon liquidation or reliquidation are

due 30 days after issuance of the bill for such payment.").  If liquidation alone may be

a basis to commence an action, then according to the Trade Court the Government

may ignore statutory and regulatory requirements and immediately sue both the

importer and surety for payment upon liquidation.  Not only did the court effectively

eliminate the bill requirement, it purported to cut off the 30-day grace period

extended to an importer to avoid incurring section 1505(d) interest. This error would

also eliminate section 113.62(a)(1)'s demand requirement incorporated into the bond

and relied upon by the surety.

The Trade Court's decision also undermines 19 U.S.C. § 1514(c)(3), which ties

the surety's 180-day deadline to file a protest to the date of mailing of a notice of

13

demand for payment. Further, the holding may interfere with the Government's ability to obtain interest under 19 U.S.C. § 580 because "the time when the bonds became due can be no earlier than the government's first formal demand for payment." *United States v. American Home Assurance Co.*, 857 F.3d 1329, 1335-36 (Fed. Cir. 2017).

By imposing a reasonableness requirement as an implied condition of the bond where none exists statutorily or in CBP's regulations incorporated into the bond, the Trade Court has improperly expanded the Government's contractual duties under the bond and ignores that "the implied duty of good faith and fair dealing cannot expand a party's contractual duties beyond those in the express contract or create conditions inconsistent contract's provisions." *Dobyns v. United States*, 915 F.3d 733, 739 (Fed. Cir. 2019). "The implied duty of good faith and fair dealing is limited by the original bargain" and is intended to prevent "acts or omissions that, though not proscribed by the contract expressly, are inconsistent with the contract's purpose and deprive the other party of contemplated value." *Metcalf Constr. Co. v. United States*, 742 F.3d 984, 991 (Fed. Cir. 2014). The bargain made in the bond contract was for the surety to receive a premium for issuing the bond, for the bond to protect the Government from nonpayment by an importer, and for the Government to demand payment from the surety when the importer fails to make payment thereby providing the surety 30 days to make payment and avoid a collection action.

The Trade Court's judgment should be reversed to give effect to the orderly statutory and regulatory process devised by Congress and CBP.

## ARGUMENT

## I.      Standard Of Review

The Court reviews the trial court's "grant or denial of summary judgment for correctness as a matter of law" and "decide[s] de novo the proper interpretation of the governing statute and regulations as well as whether genuine issues of material fact exist." *United States v. American Home Assurance Co.*, 857 F.3d 1329, 1333 (Fed. Cir. 2017) (citation omitted). This Court "reviews questions of fact under a clearly erroneous standard." *Medline Indus., Inc. v. United States*, 62 F.3d 1407, 1409 (Fed. Cir. 1995).

## II.     The Trade Court Erred As A Matter Of Law In Holding That The Government's Cause Of Action Is Time-Barred Because It Accrued At Liquidation

The Trade Court erred when it held that the Government's cause of action for breach of a customs bond accrues at liquidation and, therefore, any action against a bond that is not brought within six years of the date of liquidation is untimely.

### A.      The STB required a demand for payment

Pursuant to 28 U.S.C. § 2415(a), "every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues . . . ." This limitations period applies to

affirmative actions against sureties for the collection of debts owed under a bond. *See United States v. Cocoa Berkau, Inc.*, 990 F.2d 610, 612–13 (Fed. Cir. 1993).

The standard rule is that a "limitations period begins when the plaintiff has a 'complete and present cause of action.'" *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Ca., Inc.*, 522 U.S. 192, 201 (1997) (quoting *Rawlings v. Ray*, 312 U.S. 96, 98 (1941)); *Clark v. Iowa City*, 20 Wall. 583, 589 (1875) (noting that "[a]ll statutes of limitation begin to run when the right of action is complete . . . .")). "'Under federal law governing statutes of limitations, a cause of action accrues when all events necessary to state a claim have occurred.'" *United States v. Commodities Export Co.*, 972 F.2d 1266, 1270 (Fed. Cir. 1992) (quoting *Chevron U.S.A. v. United States*, 923 F.2d 830, 834 (Fed. Cir. 1991)). In an action to collect on a customs bond, this Court has similarly held that "[w]ith respect to a claim arising from a bond, it is equally well settled that the date of accrual occurs at the time of the breach of the bond." *Cocoa Berkau*, 990 F.2d at 613.

Here, the bond issued by Aegis incorporates the terms and requirements of 19 C.F.R. § 113.62. Appx726. Thus, for any merchandise covered by the bond that entered into U.S. commerce, Aegis agreed to "*[p]ay, as demanded by CBP,* all additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on any entry secured by this bond." 19 C.F.R. 113.62(a)(1) (emphasis added).

Thus, the question is whether the "as demanded by CBP" language incorporated into Aegis's bond conditioned Aegis's liability on Customs demanding

16

payment or was "merely a procedural step" for obtaining the duties that did not trigger the statute of limitations. *Cocoa Berkau*, 990 F.2d at 614. This Court's decision in *Cocoa Berkau* is compelling—specifically, the Court's analysis shows that, in the context of seeking payment from a surety, making a demand is a prerequisite for the Government to enforce its rights to payment under the bond where that bond requires that a demand be made.

In *Cocoa Berkau*, the principal and surety executed an "Immediate Delivery and Consumption Entry Bond" to secure the importation of chocolate. *United States v. Cocoa Berkau, Inc.*, 789 F. Supp. 1160, 1161 (Ct. Int'l Trade 1992). The terms of the bond stated:

> principal shall redeliver or cause to be redelivered to [Customs], on demand . . . any and all merchandise found not to comply with law and regulations governing its admission into the commerce of the United States . . . or in default of redelivery after a proper demand . . . the principal [or surety] shall pay to [Customs] such amounts as liquidated damages as may be demanded by [Customs].

*Cocoa Berkau*, 990 F.2d at 611.

On February 11, 1985, CBP demanded that the principal redeliver within 30 days. *Id.* The principal failed to redeliver and, on June 26, 1985, CBP demanded that the principal pay liquidated damages within 60 days. *Id.* at 611–12. The principal did not pay. *Id.* at 612. On November 20, 1990, CBP sought payment of the liquidated damages from the surety and, upon default of the surety, commenced suit on August 22, 1991. *Id.* The surety moved to dismiss

the action as untimely under 28 U.S.C. § 2415(a), arguing that the Government's right of action had accrued no later than March 13, 1985, when the principal breached the bond (*i.e.*, 30 days after the redelivery demand). *Id.* The Government countered that its right of action accrued on December 30, 1990, when the surety defaulted on its obligations to pay liquidated damages. *Id.*

This Court held that a claim accrues when all events fixing liability have occurred and for "a claim arising under a bond . . . the date of accrual occurs at the time of the breach of the bond." *Id.* at 613. Because the bond in *Cocoa Berkau* "placed an obligation on the bond principal to redeliver the imported merchandise upon a proper demand" for redelivery by Customs, the Court held that, "[t]he bond was breached, and . . . the government's right of action accrued, when the principal failed to redeliver upon proper demand." *Id.*

Thus, under *Cocoa Berkau*, the trial court was supposed to look to the bond's terms – like any other contract – to determine the date of accrual to enforce a bond, including any requirement in the bond terms that a demand for payment be made on the bond issuer. Liquidation or deemed liquidation do not appear in the bond language. Instead, the bond term related to the payment of duties that was breached here states that Aegis agrees to "[p]ay, as demanded by CBP, all additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on any entry secured by this bond." Appx726

(Aegis bond incorporating 19 C.F.R. § 113.62(a)(1)(ii)). The importer, as the

principal on the bond, had an independent obligation to pay outstanding duty

obligations. CBP does not need to rely on the bond for payment from an

importer because it has an independent right to seek payment. *See* 28 U.S.C. §

1582(3); 19 C.F.R. § 141.1. Indeed, the *Aegis 3628* court recognized that "[the

Government] can sue under 28 U.S.C. § 1582(3) to recover from an importer"

and "[t]here is no statute of limitations for § 1582(3) actions against an

importer." *Aegis 3628*, 693 F. Supp. 3d at 1336. By contrast, the surety cannot

breach its contractual obligation to pay duties upon demand until a demand has

been made.

Moreover, other precedent from this Court further confirms that

demand on a surety is a prerequisite to perfecting a claim against the surety

under section 1582(2). For example, in *United States v. Reul*, 959 F.2d 1572,

1581 (Fed. Cir. 1992), this Court noted that sureties are generally "obligated to

pay the United States" only after receiving a demand for payment because

"only from then can the United States lay claim to a loan to the surety." And

in *United States v. Am. Home Assurance Co.*, 857 F.3d 1329, 1335-36 (Fed. Cir.

2017), this Court held that "the time when the bonds became due can be no

earlier than the government's first formal demand for payment."

Indeed, other courts of appeals have held that similar language in surety bonds

make "demand . . . a prerequisite to liability and therefore to the running of the statute

of limitations." *See, e.g., United States v. Ins. Co. of N. Am.*, 83 F.3d 1507, 1510 (D.C. Cir. 1996).

**B.      The statutory, regulatory, and contractual framework supports our position that a demand for payment is necessary for the accrual of the Government's claim**

The trial court's holding that liquidation determines when the Government's claim accrues against a surety is also inconsistent with the general structure that governs the process for enforcing a bond.  Under the statutory and regulatory scheme concerning obtaining payment of outstanding duties, CBP must bill the importer and, if the outstanding obligation is not timely paid, turn to the customs bond surety and make a demand for payment.  *See* 19 U.S.C. § 1505(b)[5]; 19 C.F.R. § 24.3a(a).[6]  CBP's

---

[5] Section 1505(b) provides:

> The Customs Service shall collect any increased or additional duties and fees due, together with interest thereon, or refund any excess moneys deposited, together with interest thereon, as determined on a liquidation or reliquidation.  Duties, fees, and interest determined to be due upon liquidation or reliquidation are due 30 days after issuance of the bill for such payment.  Refunds of excess moneys deposited, together with interest thereon, shall be paid within 30 days of liquidation or reliquidation.

[6] This form of staggered billing is reflected in 19 C.F.R. § 24.3a, which provides as follows:

> (d) ***Notice*** -
> (1) ***Principal***. The principal will be notified at the time of the initial billing, and every 30 days after the due date until the bill is paid or otherwise closed.
> $$* \qquad * \qquad * \qquad * \qquad *$$
> (2) ***Surety***.

*Continued on next page.*

regulations involving demands for payment mirror section 1505(b)'s 30-day time frame. Consistent with the statute, the regulations state that, "bills for supplemental duties, taxes and fees (increased or additional duties, taxes, and fees assessed upon liquidation or reliquidation)," are due and payable within 30 days of the date of issuance of the bill. 19 C.F.R. § 24.3a(a) (incorporating the 30-day time frame of 19 C.F.R. § 24.3(e)).

Sending the bill to the importer, making a demand on the surety, and the surety's failure to make payment are prerequisites to commencing an action against a surety to collect duties under 28 U.S.C. § 1582(2). Even assuming for argument's sake that the importer's failure to pay the bill were sufficient to trigger the surety's breach under the bond, the Government's action would still be timely. The Government commenced this action within six years of both the importer's failure to pay within 30 days of being billed and the surety's failure to pay within 30 days after our making demand for payment under the STB.[7]

_____

(i) CBP will report outstanding bills on a Formal Demand on Surety for Payment of Delinquent Amounts Due, for bills more than 30 days past due (approximately 60 days after bill due date), and every month thereafter until the bill is paid or otherwise closed.

19 C.F.R. § 24.3a(d)(1)–(2).

[7] As an initial matter, liquidation would not be the correct date to measure accrual when an *importer* defaults on its obligation to pay its outstanding obligations associated with an entry. A statute provides that the importer is to be billed and then has 30 days to make its payment of liquidated duties without the accrual of interest. If the Trade Court had intended to suggest that both the surety and the importer are

*Continued on next page.*

The Trade Court's decision undermines 19 U.S.C. §§ 1505(b) and (d) and 19 C.F.R. § 24.3a, which entitle sureties to a 30-day grace period for payment. Consistent with sections 1505(b) and (d), the regulations state that "bills for supplemental duties, taxes and fees (increased or additional duties, taxes, and fees assessed upon liquidation or reliquidation)" are due and payable within 30 days of the date of issuance of the bill. 19 C.F.R. § 24.3a(a) (incorporating the 30-day time frame of 19 C.F.R. § 24.3(e)). Moreover, this regulation further states that payment by a surety is late only if it remains unpaid 30 days after "the bill due date." *Id.*

Moreover, the Trade Court's decision contradicts 19 U.S.C. § 1514(c)(3), which provides that "[a] protest by a surety which has an unsatisfied legal claim under its bond may be filed within 180 days from the date of mailing of notice of demand for payment against its bond." A surety's statutory right to protest the liquidation of an entry covered by its bond is triggered by this demand. *Id.* Thus, the demand requirement is a legally significant event for a surety and should not be perceived as merely procedural. In contrast, an importer's protest must be made within 180 days after but not before liquidation or reliquidation. *Id.* And this makes sense because an importer has made the entry, should be monitoring it, and would learn of its

---

liable on the date of liquidation, then section 1505(b)'s specification that "[d]uties, fees, and interest determined to be due upon liquidation or reliquidation are due 30 days after issuance of the bill for such payment" would be rendered inoperative. And if the Trade Court had intended to suggest that only the surety is liable on the date of liquidation, then this would lead to the bizarre result that the surety becomes liable before the importer.

liquidation in real time.[8]  If there is a perceived error in the liquidation, an importer would then have 180 days to file a protest.  Indeed, under the Trade Court's approach, the Government could ignore the bond's requirement that a demand be made on the surety thereby eliminating the demand predicate of section 1514(c)(3), which starts the 180-day deadline for a surety's protest.  Such an approach turns the orderly process designed by Congress on its head.

If CBP makes a demand on the surety via the 612 Report, then at least 60 days generally would have passed since liquidation and if the importer, who has not made payment, has disengaged and did not protest, then liquidation could become final and conclusive under 19 U.S.C. § 1514 within 180 days possibly affecting a surety's ability to protect its rights.  If liquidation, rather than a demand, were the trigger for the surety, the surety could be caught short.  Instead, by enacting section 1514(c)(3), Congress intended for sureties to have a full 180 days following appropriate notice of any default by the importer to determine whether the surety should protest the liquidation.  Thus, the statutory process associated with customs bond collection defies the Trade Court's belief that the Government's cause of action accrued at liquidation and that the requirement of a demand lacks legal significance.

The legal imperative of making a demand for payment is further supported by 19 U.S.C. § 580.  Interest under section 580 is calculated "from the time when said

---

[8] Indeed, for an importer, its liability for duties is a personal liability unlike a surety whose liability is contractual and is conditioned on a demand.

bonds become due." *See United States v. American Home Assurance Co.*, 857 F.3d 1329, 1335 (Fed. Cir. 2017) (*AHAC 2017*).

In *AHAC 2017*, a collection action in which AHAC conceded liability under the subject bonds, AHAC argued that interest accruing under section 580 should not run from the Government's first formal demand because delinquency interest under 19 U.S.C. § 1505(d) would not be "legally fixed" under 19 C.F.R. § 113.62 until CBP denied AHAC's protest. 857 F.3d at 1335. This Court rejected AHAC's argument and held that the plain language of section 580 dictates that "interest is calculated 'from the time when said bonds became due.'" *Id.* (quoting section 580). In so doing, this Court explained that "[s]ince 'no interest runs against a surety on the principal amount of a bond unless requisite notice and demand for payment is first made,' the time when the bonds became due can be no earlier than the government's first formal demand for payment." *Id.* at 1335-36 (quoting *United States v. Reul*, 959 F.2d 1572, 1581 (Fed. Cir. 1992)). Although the running of prejudgment interest against a surety was not at issue in *Cocoa Berkau*, there this Court observed that "[t]he date of accrual of interest does not necessarily govern the date of accrual of a right of action; one may be liable for a debt before being liable for interest." 990 F.2d 614. In our case, because the terms of the bond require that a demand be made on the surety, our right to section 580 interest could only arise from the default of the surety in failing to make payment, as required by the bond, after a demand.

These statutory and regulatory provisions and contractual terms that provide

for the orderly and efficient collection of outstanding duties, charges, and fees fixed at

liquidation are best read as establishing a demand as a necessary predicate to the

commencement of an action on the bond.  The importance of a demand is

particularly acute given that rights, such as filing a protest or obtaining section 580

interest, turn on a demand being made.

III. **The Trade Court Erred As A Matter Of Law In Holding That The Government Breached The Bond Contract By Failing To Issue The Demand In A Reasonable Time**

The Trade Court acknowledged that bond contracts incorporating section

113.62 have a demand requirement but no express limitation on the time for demand.

Appx7.  To find a limitation for the time for demand, the trial court turned to *Precision*

*Pine & Time, Inc. v. United States*, 596 F.3d 817 (Fed. Cir. 2010), and *Metcalf Const. Co. v.*

*United States*, 742 F.3d 984 (Fed. Cir. 2014), to hold that bond contracts contain an

implied duty of good faith and fair dealing and that CBP failed to "act diligently and

allowed the contract to fall into no man's land where the parties' expectations could

be thwarted easily."  Appx7.  Yet, even considering the Trade Court's misanalysis, "it

is generally agreed that merely negligent conduct is not sufficient to constitute a

breach of the covenant of good faith and fair dealing."  23 Williston on Contracts §

63.22 (4th ed. 2025).

In a footnote, the court claimed that "[b]ased on contracting principles, a bond contract contains an implied reasonableness requirement. Accordingly, even if the parties did not 'contemplate' a particular time limit by the bond, the parties were required to act reasonably." Appx7. This conclusion is contrary to controlling precedent regarding the implied duty of good faith and fair dealing.

Citing *Precision Pine*, this Court in *Metcalf* explained that the duty of good faith and fair dealing depends in part on what the contract promises (or disclaims) and is focused on the "justified expectations of the other party," which depend on the contract's allocations of benefits and risks. For a customs bond surety, the benefit is obtaining the premium; the risk is that its principal fails to make payment, and the surety is required to pay the principal's obligation. As to the Government, the bond contract promises that a demand for payment will be made on a surety should the principal fail to make payment and that the surety will pay on demand.

This Court had explained five years earlier that under the "covenant of good faith and fair dealing" a party to the contract is "not to act so as to destroy the *reasonable expectations* of the other party regarding the *fruits of the contract*." *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005). Further, the "'implied duty of good faith and fair dealing cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions.'" *Metcalf,* 742 F.3d at 991 (quoting *Precision Pine*, 596 F.3d at 831).

In *Precision Pine*, the logging contracts at issue expressly allowed the Government to suspend the contractor's timber harvesting operation to comply with a court order. 596 F. 3d at 828. The Government suspended the contracts due to a court injunction. *Id.* However, the trial court concluded that delays by the Government during the suspension violated the implied duty of good faith and fair dealing. *Id.* at 828-31. This Court, while acknowledging the delays during suspension, held there was no breach of contract because there was no evidence that any delay was intended to hamper the contracts and did not reappropriate any benefits guaranteed by the contracts. *Id.* Instead, the Court observed that "[c]ases in which the government has been found to violate the implied duty of good faith and fair dealing typically involve some variation on the old bait-and-switch." *Id.* at 829. This Cout's observation in *Precision Pine* comports with *Williston's* acknowledgement that "merely negligent conduct is not sufficient to constitute a breach of the covenant of good faith and fair dealing." *Williston* at § 63.22.

Here, the bond contract contains no express condition that demand be made within a certain time after liquidation. Thus, Aegis cannot claim that it expected a demand for payment within a time certain of liquidation. Indeed, as explained above, there is an orderly process by which CBP seeks payment from the importer by issuing a bill. Based on section 1505(b) and 19 C.F.R. § 24.3a, Aegis would be entitled to

expect that, barring circumstances not present here,[9] CBP would not make a demand

for payment from it until after it had sought payment from the importer and that CBP

would make a demand before commencing a lawsuit to collect the duties. This is

exactly how CBP conducted itself.

"[A] customs bond must be understood or applied with reference to customs

laws, and that insofar as the applicable statutes and regulations are 'designed to affect

the rights of the parties to the contract [, such provisions] must be regarded as parts

of the contract.'" *Old Republic Ins. Co. v. United States*, 645 F. Supp. 943, 953 (Ct. Int'l

Trade 1986) (quoting *United States v. De Visser*, 10 F. 642, 647 (S.D.N.Y. 1882)). The

requirement of a demand as part of Aegis's surety bond made section 1505(b), section

1514(c)(3), and 19 C.F.R. § 113.62(a)(1)(ii) terms of the bond because they created an

obligation to the surety to make a demand for payment.

Moreover, given that there is no statutory or regulatory provision imposing a

time or even a reasonable time limitation on the demand, Aegis cannot argue that the

demand here involves some variation on the old bait-and-switch. Instead, the absence

of such language in these applicable provisions in contrast to its presence in other

provisions—such as the five year record-keeping requirements of 19 U.S.C. § 1508,

interest accrual of 19 U.S.C. § 1505(b), and notice of liquidation regulations of 19

C.F.R. § 159.9(c)(2)(ii), each of which contain language that requires acts to be done

---

[9] For example, if an importer has filed bankruptcy before the bill is issued.

within a certain or reasonable time—reveals that reasonableness or some other time limitation on the demand could not have been a reasonable expectation of Aegis as to the bargain struck in the bond contract.  Thus, no specific promise to Aegis was undermined because no such duty, which must be keyed to the obligations of the contract itself, was imposed by the contract.  *See Dobyns*, 915 F.3d at 739.[10]

The Trade Court ignores that the demand to Aegis was within months of the bill to the importer.  The Trade Court could not explain how a reasonableness standard, arising from contract, would apply to the bill to the importer under section 1505(b) and why a demand made on the surety within months of that bill is unreasonable.  Instead, the trial court relied on *Aegis 3628* and its recitation of *Nyhus v. Travel Management Corp.*, 466 F.2d 440, 452-53 (D.C. Cir. 1972), to hold that an eight-year delay in issuing a demand was unreasonable.  That reliance was misplaced.

The *Aegis 3628* court reasoned that "[c]ontracts with a demand requirement and no express limitation on the time for demand contain an implied reasonable time requirement: The party required to make demand must do so within a reasonable time."  693 F. Supp. 3d at 1338.  To draw that conclusion, the *Aegis 3628* court relied primarily on *Nyhus v. Travel Mgmt. Corp.*, 466 F.2d 440 (D.C. Cir. 1972).  However, when the *Nyhus* court stated that "the time for demand is ordinarily a reasonable

---

[10] Further, given that the Government is acting in its sovereign capacity to collect tariffs, implied obligations cannot be found where none exist statutorily, regulatorily, or contractually.

time," 466 F.2d at 453, it was discussing the issue of claim accrual for statute of limitations purposes, not contract interpretation. That is, a cause of action for recovery on a bond that has a requirement for a demand accrues (and the statute of limitations therefore begins to run) after the right to make a demand arises, here after a bill has been sent to the importer. *See id.* Although that general rule prevents a party from unilaterally delaying its demand to effectively extend the statute of limitations in perpetuity, it does not establish an implied contractual term of reasonableness.

Further, as *Nyhus* explains, the rule that a claim accrues a reasonable time after a demand can be made "is a matter of the parties' expectations, and a different result follows when an indefinite delay in making demand was within their contemplation." *Id.* Because there is no statute of limitations on the Government's ability to collect duties from an importer, or a statutory time limit on issuing a bill for the payment of duties, a delay of eight years is within the parties' contemplation and, even, "infinite delay" is "within … contemplation." *See id.*

Aegis could have no expectation that a demand for payment would be made on it within six years of liquidation. Because CBP made its demand for payment from the surety within six years after its bill to the importer went unpaid, and CBP's collection action was timely filed within six years of either the first bill to the importer (November 25, 2016) or within six years and thirty days after the first demand on the surety (February 6, 2017), the Government's action was timely.

## CONCLUSION

Because the Trade Court's claim accrual analysis and implied reasonableness contractual condition are without legal support, the judgment of the Trade Court should be reversed.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

*Of Counsel*
SUZANNA HARTZELL-BALLARD
Office of Assistant Chief Counsel

By: /s/ Beverly A. Farrell
    BEVERLY A. FARRELL
    Senior Trial Attorney
    Civil Division, Dept. of Justice
    Commercial Litigation Branch
    26 Federal Plaza – Suite 346
    New York, NY 10278
    Tel. (212) 264-9230 or 0483
    Attorneys for Plaintiff-Appellant

Dated: January 26, 2026

# ADDENDUM:

# JUDGMENT AND OPINION

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| UNITED STATES,<br><br>     Plaintiff,<br><br>  v.<br><br>AEGIS SECURITY INSURANCE COMPANY,<br><br>     Defendant. | Before: Jane A. Restani, Judge<br><br>Court No. 22-00327 |

## <u>JUDGMENT</u>

  This case having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; now therefore, in conformity with said decision.

  Judgment is entered for Aegis Security Insurance Company.


                  /s/ Jane A. Restani
                Jane A. Restani, Judge

Dated: June 11, 2025
New York, New York

Slip Op. 25-73

### UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UNITED STATES, | |
| Plaintiff, | |
| v. | Before: Jane A. Restani, Judge |
| AEGIS SECURITY INSURANCE COMPANY, | Court No. 22-00327 |
| Defendant. | |

### OPINION AND ORDER

[Granting the defendant's motion for summary judgment because the government's action to recover on the Customs bond is barred by the statute of limitations and contracting principles.]

Dated: June 11, 2025

<u>Beverly A. Farrell</u>, U.S. Department of Justice, International Trade Field Office, of New York, NY, for the plaintiff the United States. With her on the brief was <u>Taylor Rene Bates</u>.

<u>Jason Matthew Kenner</u>, Sandler, Travis & Rosenberg, PA, of New York, NY, and <u>Jeffrey Mark Telep</u>, King & Spalding, LLP, of Washington, DC, for the defendant Aegis Security Insurance Company.

Restani, Judge: Before the court are cross-motions for summary judgment. Def.'s Mot. for Summ. J., ECF No. 30 (Oct. 21, 2024) ("Aegis MSJ"); Pl.'s Cross-Mot. for Summ. J., ECF No. 34 (Dec. 9, 2024) ("Gov. MSJ"). Plaintiff, the United States ("government"), seeks to recover unpaid antidumping duties and interest totaling $100,700 under a United States Customs and Border Protection ("Customs") bond from Aegis Security Insurance Company ("Aegis"). Gov. MSJ at 1, 32. Aegis asks the court to find that the government's action is barred because the government failed to issue the demand in a reasonable time and because the government failed to commence the action within the applicable six-year statute of limitations. Aegis MSJ at 11, 25. At issue is when the statute of limitations began to run and, separately, if Customs unreasonably

delayed in issuing a demand to Aegis to collect on the bond. Two decisions of this court have held that Customs may not collect on such stale claims. For the reasons set forth below, the court agrees with the results of those matters and concludes that the government may not recover on the bond here.

## BACKGROUND

There are no material facts in dispute in this case. Pl.'s Statement of Undisputed Material Facts at 1, ECF No. 36 (Dec. 10, 2024) ("Gov. SOF"); Def.'s Statement of Undisputed Material Facts at 1, ECF No. 30-1 (Oct. 21, 2024) ("Aegis SOF"). On October 20, 2003, Presstek Wood Technologies Inc. ("Presstek") imported honey from the People's Republic of China ("China"). Gov. SOF ¶ 1; Aegis SOF ¶ 21. The imported product was subject to an antidumping duty order on honey from China issued by the Department of Commerce ("Commerce"). See Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order; Honey From the People's Republic of China, 66 Fed. Reg. 63,670 (Dep't Commerce Dec. 10, 2001) ("Honey Order"); Gov. SOF ¶ 1; Aegis SOF ¶ 20. In its entry papers, Presstek declared that Wuhan Bee Healthy Ltd. ("Wuhan Bee") was the exporter, and that the entry was subject to antidumping duties at a rate of 183.8% ad valorem. Gov. SOF ¶ 2; Aegis SOF ¶ 31. Presstek executed a single transaction bond, underwritten by Aegis, to secure the duties, taxes, and charges owed. Aegis SOF ¶ 19; see Gov. SOF ¶¶ 3–4. At the time, a bond was permitted in lieu of a cash deposit of estimated duties in new shipper reviews.[1] By the terms of the bond, Aegis agreed to be

---

[1] Normally, when an importer imports goods subject to an antidumping or countervailing duty order, the importer gives Customs a deposit representing the estimated amount of duties owed. See 19 U.S.C. § 1673e(a)(3). Congress briefly allowed new shippers to post bonds instead of cash deposits while undergoing a new shipper review. See 19 U.S.C. § 1675(a)(2)(B)(iii) (1994). Congress later eliminated the bond option for new shippers because the program allowed exporters to avoid paying duties by disappearing without paying the duties owed. Accordingly, the law permitting the bond program was suspended in 2006 and later revoked when the statute was

jointly and severally liable to pay any duties, taxes, and subsequent charges demanded by Customs, up to the limit of liability of $100,700, regarding the subject entry imported by Presstek.  Gov. SOF ¶¶ 4–5; Aegis SOF ¶ 19.

Commerce conducted an administrative review of the Honey Order for the time period of December 1, 2002, through November 30, 2003, which included the entry of honey made by Presstek.  Compl. at ¶ 14, ECF No. 2 (Nov. 22, 2022); see Honey From the People's Republic of China: Preliminary Results, Partial Recission, and Extension of Final Results of Second Antidumping Duty Administrative Review, 69 Fed. Reg. 77,184 (Dep't Commerce Dec. 27, 2004). On September 19, 2008, following the conclusion of the administrative review and subsequent judicial review by the United States Court of International Trade, Commerce published the amended results of the administrative review.  Honey From the People's Republic of China: Notice of Amended Final Results Pursuant to Final Court Decision, 73 Fed. Reg. 54,366, 54,367 (Dep't Commerce Sept. 19, 2008).  In the amended results, Commerce calculated an antidumping duty rate of 101.48% ad valorem.  Id.  Presstek's antidumping duty liability was calculated to be $57,489.60.  Gov. SOF ¶ 9; Aegis SOF ¶ 23.  Customs failed to timely liquidate the subject entry of honey; thus, the subject entry was deemed liquidated on March 19, 2009, at the rate of duty, value, quantity, and amount of duty asserted at time of entry.  Gov. SOF ¶ 10; Aegis SOF ¶¶ 29, 32; see 19 U.S.C. § 1504(d).  Because Presstek had asserted at the time of entry that the honey was subject to antidumping duties at a rate of 183.8% ad valorem, Presstek's liability for antidumping duties for the subject entry became $100,634.18 as a result of the deemed liquidation, instead of the $57,489.60 found to be owing by Commerce.  See Gov. SOF ¶¶ 9, 18; Aegis SOF ¶¶ 23, 31.

---

amended in 2016.  See Pension Protection Act of 2006, Pub. L. No. 109-280, § 1632, 120 Stat. 780 (2006); Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. No. 114-125, § 433, 130 Stat. 122, 171 (2016).

Over seven years passed.  On November 25, 2016, Customs billed Presstek for the subject

entry, which Presstek failed to pay.  Gov. SOF ¶¶ 11–12; Aegis SOF ¶ 38.  On February 6, 2017,

Customs made its first payment demand on Aegis demanding the unpaid duties plus the interest

that had accrued from the time the bill was issued to Presstek.  Gov. SOF ¶ 13; Aegis SOF ¶ 39.

Aegis filed a protest of Customs' demand on April 25, 2017, which Customs granted in part.[2]  Gov.

SOF ¶¶ 16–17; Aegis SOF ¶ 40.  Almost two years later, on March 15, 2019, Customs issued a

second bill to Presstek, which Presstek once again failed to pay.  Gov. SOF ¶ 17; Aegis SOF ¶ 40.

Customs made a second demand on Aegis on June 4, 2019.  Gov. SOF ¶ 19; Aegis SOF ¶ 41.

Aegis did not pay or protest the demand.  Gov. SOF ¶¶ 20–21; Aegis SOF ¶ 42.  On November

22, 2022, the government filed suit to recover the unpaid antidumping duties and interest.[3]  See

Summons, ECF No. 1 (Nov. 22, 2022).

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1582(2).  Summary judgment "shall [be

granted] if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law."  USCIT R. 56(a).

## DISCUSSION

**I.      The Government Breached the Bond Contract by Failing to Issue the Demand in**

---

[2] On November 25, 2016, Customs attempted to reliquidate the entry at the antidumping duty rate
consistent with Commerce's amended final results.  Compl. ¶ 19; First Am. Ans. to Compl. ¶ 19,
ECF No. 13 (Apr. 10, 2023) ("Am. Ans.").  Presumably to preserve its statute of limitations
defense, Aegis protested and argued in part that the entry had liquidated by operation of law on
March 19, 2009, and that the attempted reliquidation on November 25, 2016, was contrary to law.
Compl. ¶ 26; Am. Ans. ¶ 26.  Customs granted the protest in part.  Compl. ¶ 29; Am. Ans. ¶ 29.
[3] During this period of time, Aegis' reinsurer, Lincoln General Insurance Company ("LGIC"),
became insolvent.   Aegis SOF ¶¶ 17, 33; Resp. to Def.'s Statement of Facts ¶¶ 17, 33, ECF No.
35 (Dec. 10, 2024) ("Resp. to Def.'s SOF").

### a Reasonable Time

Aegis argues that the government cannot recover on the bond because Customs failed to make its demand on Aegis within a reasonable time.  Aegis MSJ at 25.  Aegis contends that the bond contract contained an implied reasonableness requirement, and Customs breached the contract by failing to issue the bill within a reasonable time.[4]  Id.  The government responds that no reasonable time requirement applies to Customs' demand for payment because 19 C.F.R. § 113.62(a)(1)(ii) does not contain such a requirement.  Gov. MSJ at 24–27; Pl.'s Reply at 11, ECF No. 46 (Mar. 20, 2025) ("Gov. Reply").  The government adds that even if the court applies a reasonableness standard, the government's delay in issuing the demand was reasonable because the objective of a Customs bond is to protect the revenue, meaning an unlimited duration is necessary to satisfy the contractual purpose.[5]  Gov. Reply at 13.  Last, the government argues that even if it did breach an implied reasonableness requirement in the bond contract, such a breach would not be material, meaning Aegis must still perform on the contract.[6]  Id. at 15.

---

[4] Aegis also argues that the government would violate the Administrative Procedures Act if Customs was not bound by a reasonableness requirement because Customs would be acting arbitrarily and capriciously.  Def. Resp. to Mot. and Reply in Support of Mot. for Summ. J. at 14–16, ECF No. 42 (Jan. 27, 2025) ("Aegis Reply").  Because the court finds that Customs was bound by a reasonableness requirement, the court does not reach this issue.

[5] The government also alleges that Aegis actually benefited from the delay because its liability is fixed at the face value of the bonds, meaning Aegis retained the benefit of the premium and the time-value of the money.  Gov. Reply at 16–17.  While interest may be capped at the face value of the bond under 19 U.S.C. § 1505, the government itself argues that Aegis is liable for interest pursuant to 19 U.S.C. § 580 (which provides for interest running from the date the bond becomes due) and post-judgment interest pursuant to 28 U.S.C. § 1961, neither of which are limited by the bond.  Gov. MSJ at 1, 10.  By the government's own reasoning, therefore, Aegis accrued or will accrue interest above the face value of the bond.  Accordingly, the government's argument that Aegis somehow benefited from the government's delay fails.

[6] The government also argues that no time limit was contemplated by the bond.  Gov. Reply at 11.  The government analogizes to 19 U.S.C. § 1592 pursuant to which the government can recover revenue by suing up to five years after the discovery of a violation of the section.  Id. (citing 19 U.S.C. § 1621).  The government infers that because of the silence regarding a time limit in 19 U.S.C. § 1505(b), the statute that defines when the government's cause of action to sue on a

The bond at issue incorporated language from 19 C.F.R. § 113.62(a)(1)(ii) which requires the surety to "[p]ay, as demanded by [Customs], all additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on any entry secured by this bond." Gov. MSJ at 9; Aegis MSJ at 23. Bond contracts incorporating 19 C.F.R. § 113.62 have a demand requirement but no express limitation on the time for demand. Like any contract, however, they are governed by the implied duty of good faith and fair dealing, which is inherent in every contract. See Precision Pine & Timber, Inc. v. United States, 596 F.3d 817, 828 (Fed. Cir. 2010) (citation omitted). "In essence, this duty requires a party to not interfere with another party's rights under the contract." Id. (citation omitted). The government's failure to fulfill this duty would constitute breach of contract. Metcalf Const. Co. v. United States, 742 F.3d 984, 990 (Fed. Cir. 2014); see also Restatement (Second) of Contracts § 205 cmt. d (1981) (stating potential breaches of the implied duty of good faith and fair dealing include "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance"). By not making a timely demand, Customs failed to act diligently and allowed the contract to fall into no man's land where the parties' expectations could be thwarted easily.

---

Customs bond accrues, along with the use and terms of Customs bonds, the government is not bound by a timing requirement to issue a demand. Id. at 11–12. As the court discusses, a Customs bond is a contract. Based on contracting principles, a bond contract contains an implied reasonableness requirement. Accordingly, even if the parties did not "contemplate" a particular time limit by the bond, the parties were required to act reasonably. The government also argues that, at the time of contracting, the parties contemplated the statute of limitations running from the date of the demand because under 19 C.F.R § 24.3a, the surety would only receive notice that the importer had not made payment when a demand for payment was made on the surety via a "612 Report," which begins the 180-day deadline for the surety to protest. Gov. MSJ at 23; Oral Argument at 4:21. Assuming this regulation is part of the contract, the government's argument does not lead to the conclusion that the parties contemplated Customs waiting eight years to send the demand. Rather, it merely suggests that the parties understood the demand to play a role in Customs' collection efforts.

The court has characterized this duty as a reasonableness requirement; namely, Customs must issue the demand in a reasonable time.[7]  See United States v. Aegis Sec. Ins. Co., 693 F. Supp. 3d 1328, 1338 (CIT 2024) ("Aegis I") (citing Nyhus v. Travel Mgmt. Corp., 466 F.2d 440, 452–53 (D.C. Cir. 1972) ("[A] party is not at liberty to stave off operation of the statute [of limitations] inordinately by failing to make demand" and "the time for demand is ordinarily a reasonable time.")); see also United States v. Am. Home Assurance Co., 653 F. Supp. 3d 1277, 1294 (CIT 2023) ("Am. Home") ("Customs must act, and act reasonably, in pursuing its claims under a bond, like any prudent litigant.").  In Aegis I, the court held that Customs' eight-year delay in issuing a demand was unreasonable.  693 F. Supp. 3d at 1339–40.  In Am. Home, the court held that Customs' nearly eleven-year delay in issuing a demand was unreasonable.  653 F. Supp. 3d at 1293–95.

Here, the subject entry was deemed liquidated on March 19, 2009.  Gov. SOF ¶ 10; Aegis SOF ¶ 32.  Over seven years passed before Customs first billed Presstek on November 25, 2016.  Gov. SOF ¶ 11; Aegis SOF ¶ 38.  Almost eight years passed from the date of liquidation before Customs made its first demand on Aegis on February 6, 2017.  See Gov. SOF ¶ 13; Aegis SOF ¶ 39.  Aegis filed its protest of the demand on April 25, 2017, which Customs granted in part.  Compl. ¶ 29; Am. Ans. ¶ 29.  Customs then delayed another two years before issuing a second bill to Presstek on March 15, 2019, and making a second demand on Aegis on June 4, 2019.  Gov. SOF ¶ 19; Aegis SOF ¶ 41.  In total, over ten years passed between liquidation and the post-protest proceedings demand on Aegis.  Customs delayed in issuing the bill because it had lost or misfiled

---

[7] The government is not a direct party or signatory to the bond at issue.  Rather, it is a third-party beneficiary.  Gov. MSJ at 27; Compl., Ex. B.  This does not preclude the government from a reasonableness requirement.  Namely, if the government seeks the benefit of the bond, it must act reasonably.

the relevant documents for Presstek's entry, not because of any action by Aegis.  Aegis SOF ¶ 29;

Resp. to Def.'s SOF ¶ 29.

While there is no bright-line rule for what constitutes a reasonable time to make a demand,

a nearly eight-year delay in issuing the first demand for no reason other than that Customs lost the

relevant documents is both unreasonable and violates the duty of good faith and fair dealing.  As

the court has found repeatedly, the mere fact that the regulation does not include a time requirement

for a demand does not mean that Customs is unbound by reason.  If the court were to take the

government's argument that Customs need not act reasonably to its logical conclusion, Customs

could delay issuing a demand for decades while interest accrues and reinsurers may vanish, as

occurred here.  See supra n.3.  Such a system would be illogical and highlights the very reason

why the implied duty of good faith and fair dealing is inherent in all contracts: to prevent such

unreasonable behavior.  The government has failed to show that the nearly eight-year delay in

issuing the first demand—and the ten-year delay in issuing the second demand—was reasonable.

Accordingly, the government breached the bond contract and cannot recover under that contract.[8]

## II.    The Statute of Limitations Ran From the Date of Liquidation

Aegis argues that the statute of limitations runs from the date of liquidation, or 30 days

thereafter, rather than the date of the demand because all events necessary to fix the surety's

liability occurs at liquidation.    Aegis MSJ at 12–13.    The government responds that the

government's right of action to collect upon a bond accrues when the bond is breached, which

---

[8] As Aegis argued at Oral Argument, this breach was material for a number of reasons.  Customs'
delay to timely liquidate the entry ran up Aegis' liability from around $50,000 to around $100,000.
Oral Argument at 50:10.  The delay in issuing the demand resulted in Aegis owing thousands more
than it would have if Customs had promptly issued the demand.  Id.  The delay has also forced
Aegis to incur significant costs to litigate multiple cases before the United States Court of
International Trade on this issue and to settle other cases to avoid incurring even more litigation
costs.  Id. at 51:33.

occurs only when Customs issues the demand, and the surety fails to pay.[9]  Gov. MSJ at 16.

Accordingly, the government argues that the statute of limitations runs from the date of the

demand.  Id. at 17–18.  Alternatively, the government argues that the statute of limitations runs

from the date of the issuance of the bill based on the plain language of the statute as held by the

court in Aegis I.  See id. at 23.

Two statutes potentially establish the time limit for the government to recover on a

Customs bond.  28 U.S.C. § 2415(a) establishes a six-year statute of limitations on government

actions for "money damages . . . founded upon any contract express or implied in law or fact[.]"

19 U.S.C. § 1505(b) defines when the government's cause of action to sue on a Customs bond

accrues.  The latter states that "[d]uties, fees, and interest determined to be due upon liquidation

or reliquidation are due 30 days after issuance of the bill for such payment."  19 U.S.C. § 1505(d)

goes on to state that "any unpaid balance shall be considered delinquent and bear interest by 30-

day periods . . . from the date of liquidation or reliquidation . . . ."  In Aegis I, the court read the

two statutes to mean that the statute of limitations runs from the billing date.  See 693 F. Supp. 3d

at 1338.  In Am. Home, the court held that the statute of limitations runs from the date of liquidation

because "that was when the amount of the debt previously established at importation became

fixed."  653 F. Supp. 3d at 1290.

A cause of action accrues when all events necessary to state a claim have occurred.  United

States v. Commodities Export Co., 972 F.2d 1266, 1270 (Fed. Cir. 1992) (quoting Chevron U.S.A.,

Inc. v. United States, 923 F.2d 830, 834 (Fed. Cir. 1991); Nager Elec. Co. v. United States, 368

---

[9] The government argues Aegis is liable for interest running from the date the first bill issued to
when Aegis became delinquent, along with post-judgment interest running from the date that the
court enters judgment.  Gov. MSJ at 10–11.  Aegis does not respond to this argument.  Because
the court holds that the government breached the contract and that its action is time-barred, the
court need not address this argument.

F.2d 847, 851–52 (1966)).  While the importer's liability for duties on the subject merchandise

attaches at the time of importation, the amount of the debt is legally fixed at liquidation.  See 19

C.F.R. § 141.1(b)(1); 19 C.F.R. § 159.1 ("Liquidation means the final computation or

ascertainment of duties on entries for consumption or drawback entries.").  Accordingly, "[t]he

[g]overnment's right to collect additional duties attaches when the entry liquidates."  Am. Home,

653 F. Supp. at 1288–89 (quoting United States v. Great Am. Ins. Co. of N.Y., 35 CIT 1130, 1140,

791 F. Supp. 2d. 1337, 1350 (2011), aff'd 738 F.3d 1320 (Fed. Cir. 2013)); see also United States

v. Int'l Fid. Ins. Co., 273 F. Supp. 3d 1170, 1176 (CIT 2017) ("In a collection action on a customs

bond, '[t]he Government's right of action accrues from the date of liquidation.'") (citation

omitted).

    While the court in Aegis I correctly found that the language of 19 U.S.C. § 1505(b) on its

face suggests that the statute of limitations runs from the date of the issuance of the bill, such an

interpretation runs contrary to Congressional intent and would lead to untenable results.  The prior

language of 19 U.S.C. § 1505(b) read "[t]he appropriate customs officer shall collect any increased

. . . duties due . . . as determined on a liquidation or reliquidation."  19 U.S.C. § 1505(b) (1982)

(emphasis added).  Congress amended the statute to state "[d]uties determined to be due upon

liquidation or reliquidation shall be due 15 days after the date of that liquidation or reliquidation[.]"

19 U.S.C. § 1505(c) (1988) (emphasis added).  Congress once again amended the statute to read

"[d]uties, fees, and interest determined to be due upon liquidation or reliquidation are due 30 days

after issuance of the bill for such payment" in a section relating to collection of duties.  19 U.S.C.

§ 1505(b); see NAFTA Implementation Act, Pub. L. No. 103-182, § 642, 107 Stat. 2057 (1993).

If Congress had intended to shift the triggering event of the statute of limitations from the clear

and defined date of liquidation to the muddled date of whenever Customs decides to issue a bill, it

would have stated so more clearly.  See Whitman v. Am. Trucking Assn's, 531 U.S. 457, 468 (2001) ("Congress does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes.").  Rather, in amending the statute, apparently Congress attempted to bring clarity to the collection process and encourage prompt payment by providing a grace period.

The remaining text of 19 U.S.C. § 1505 supports this inference.  As described previously, 19 U.S.C. § 1505(d) states that "any unpaid balance shall be considered delinquent and bear interest . . . from the date of liquidation or reliquidation . . . ." (emphasis added).  This indicates that Congress considered the date of liquidation, not the date of issuance of the bill, as the moment at which liability attaches.  This is particularly apparent when considered alongside 28 U.S.C. § 2415(a), which aims to level the playing field between the government and private litigants, by ensuring that the government may not indefinitely postpone the running of the statute of limitations.  See Commodities Export Co., 972 F.2d at 1271 n.3 (quoting Crown Coat Front Co. v. United States, 386 U.S. 503, 521 (1967)).  Without clearer indication, the court cannot conclude that Congress intended for 19 U.S.C. § 1505(b) to hand Customs complete authority to indefinitely postpone the statute of limitations, particularly when the six-year statute of limitations set out in 28 U.S.C. § 2415(a) aims to limit the government's litigation advantage, not just prevent stale claims.

Further, as discussed above, all the necessary events for the government to state a claim occur at the time of liquidation, meaning it is the proper point in time for the cause of action to accrue.  Customs bonds do not require a demand to be made before a suit can be brought because a surety's obligation to pay arises at liquidation and the government's cause of action for payment accrues when the debt is unpaid.  See Am. Home, 653 F. Supp. 3d at 1292; see also United States

v. Cocoa Berkau, 990 F.2d 610, 614 (Fed. Cir. 1993) (noting that the "demand made by Customs upon the surety was merely a procedural step for obtaining the damages and did not in itself create liability"). Here, the subject entry was liquidated by operation of law on March 19, 2009. Gov. SOF ¶ 10; Aegis SOF ¶ 32. Because Aegis was jointly and severally liable for the unpaid duties, the government's cause of action against Aegis accrued at the same moment that it accrued against Presstek: the date of liquidation. Although Customs made two demands on Aegis, these demands were not a necessary event for the government's cause of action. See Cocoa Berkau, 990 F.2d at 614. Accordingly, the statute of limitations began to run on March 19, 2009. Gov. SOF ¶ 10; Aegis SOF ¶ 32. The six-year statute of limitations therefore expired on March 19, 2015. See 28 U.S.C. § 2415(a). The government did not file suit until November 22, 2022, meaning its action is barred by the statute of limitations.[10] Aegis' SOF ¶ 42.

## CONCLUSION

For the foregoing reasons, the court grants Aegis' motion for summary judgment, ECF No. 30, and denies the government's motion for summary judgment, ECF No. 34. Judgment will be entered accordingly.

  /s/ Jane A. Restani  
Jane A. Restani, Judge

Dated: June 11, 2025  
      New York, New York

---

[10] Aegis also argues that the doctrine of impairment of suretyship bars the government's suit because the government's delay altered the risks that Aegis faced. Aegis MSJ at 29. Aegis also contends that the government impaired Aegis' right to recourse because LGIC, its re-insurer, went insolvent during Customs' delay in issuing the demand. Id. at 34. The government responds it took no actions that increased Aegis' risk because Customs acted within the statutory scheme when issuing the demand. Gov. MSJ at 30. As the court discussed above, Customs' actions were unreasonable, and the government's suit is barred by the statute of limitations. The court therefore need not turn to the defense of impairment of suretyship to provide relief for Aegis.

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system.  Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

 /s/ Beverly A. Farrell
Beverly A. Farrell

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 8,008 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in Garamond 14-point font, a proportionally spaced typeface.


/s/ Beverly A. Farrell
Beverly A. Farrell