**No. 25-2009**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

UNITED STATES,

*Plaintiff-Appellant,*

v.

AEGIS SECURITY INSURANCE CO.,

*Defendant-Appellee.*

On Appeal from the United States Court of International Trade
No. 1:22-cv-00327-JAR, Hon. Jane A. Restani, Senior Judge

## RESPONSE BRIEF
## FOR DEFENDANT-APPELLEE

Gilbert Lee Sandler
SANDLER, TRAVIS &
ROSENBERG, P.A.
286 Madison Avenue
Suite 1200
New York, NY 10017
(305) 894-1000

Jeffrey M. Telep
Amy R. Upshaw
K. Paige Tenkhoff
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, DC 20006
(202) 737-0500
jtelep@kslaw.com

*Counsel for Defendant-Appellee*

April 22, 2026

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, counsel for Defendant-Appellee certifies the following:

1.  The full name of the party represented by me:

    Aegis Security Insurance Co.

2.  The names of the real parties in interest represented by me:

    N/A.

3.  Parent corporations and publicly held companies that own 10% or more of stock in the party:

    Endeavor Capital Fund Patrick Kilkenny and LD Investments LLC are the parent corporations for Aegis. There are no publicly traded companies that own equity in Aegis.

4.  The names of all firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this Court (and who have not or will not enter an appearance in this case) are:

    N/A.

5.  The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

    *United States v. Aegis Sec. Ins. Co.*, No. 25-cv-00051 (Ct. Int'l Trade filed Feb. 28, 2025);

    *United States v. XL Specialty Ins. Co.*, No. 25-cv-00154 (Ct. Int'l Trade filed July 17, 2025).

6.  The organizational victims and bankruptcy cases applicable to this appeal:

    N/A.

Date: April 22, 2026

*/s/ Jeffrey M. Telep*
Jeffrey M. Telep

*Counsel for Defendant-Appellee*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................v

STATEMENT OF RELATED CASES ......................................................xi

INTRODUCTION ..........................................................................1

STATEMENT OF JURISDICTION........................................................4

STATEMENT OF THE ISSUES...........................................................5

STATEMENT OF THE CASE .............................................................5

    A.    Statutory and Regulatory Background ...................................5

    B.    Customs' Implementation of the Bond Program and Its Attempts to Recover on Old Bonds ..................................8

    C.    Factual Background.........................................................12

    D.    Procedural Background ....................................................16

SUMMARY OF ARGUMENT .............................................................18

STANDARD OF REVIEW..................................................................22

ARGUMENT .................................................................................22

I.    The Trade Court Correctly Held That the 6-Year Statute of Limitations Bars this Lawsuit.........................................................22

    A.    Customs' cause of action accrued at least 13 years before it sued Aegis .........................................................22

    B.    The statute of limitations does not run from the demand .......................................................................24

    C.    The Government's position would undermine the regulatory scheme by permitting Customs to unilaterally delay bond recovery lawsuits ...........................35

II.   The Trade Court Correctly Held that an Implied Duty of Reasonableness Binds Customs .......................................................43

    A.   This Court and other courts have unanimously held that an implied reasonableness requirement applies to government contracts .......................................................44

    B.   The Government's novel argument that there is no duty to issue its demand in a reasonable time conflicts with its own authority and past positions..............50

III.  The Impairment of Suretyship Doctrine Discharges Aegis's Obligations Under the Bond .........................................................59

    A.   Customs fundamentally altered the risks imposed on Aegis through its delay in seeking payment........................60

    B.   Customs impaired Aegis's right of recourse .........................63

CONCLUSION .................................................................................67

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases**

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*,
607 F.3d 817 (Fed. Cir. 2010) ..................................................44

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*,
501 U.S. 104 (1991) ...............................................................55

*Bank of China v. Chan*,
937 F.2d 780 (2d Cir. 1991) ...................................................53

*Cyber Power Sys. (USA) Inc. v. United States*,
586 F. Supp. 3d 1325 (Ct. Int'l Trade 2022) .......................42

*Dobyns v. United States*,
915 F.3d 733 (Fed. Cir. 2019) ...............................................54

*FCC v. Prometheus Radio Project*,
592 U.S. 414 (2021) ...............................................................45

*Ins. Co. of the West v. United States*,
243 F.3d 1367 (Fed. Cir. 2001) ...............................................7

*Int'l Trading Co. v. United States*,
281 F.3d 1268 (Fed. Cir. 2002) .............................................40

*Int'l Trading Co. v. United States*,
412 F.3d 1303 (Fed. Cir. 2005) .............................................40

*Lumbermens Mut. Cas. Co. v. United States*,
654 F.3d 1305 (Fed. Cir. 2011) .............................................60

*Metcalf Constr. Co. v. United States*,
742 F.3d 984 (Fed. Cir. 2014) .......................................*passim*

*Nyhus v. Travel Mgmt. Corp.*,
466 F.2d 440 (D.C. Cir. 1972) .................................31, 45, 47

*Pennsylvania Nat'l Mut. Cas. Ins. Co. v. City of Pine Bluff*,
354 F.3d 945 (8th Cir. 2004) ...........................................64, 65

*Precision Pine & Timber, Inc. v. United States,*
    596 F.3d 817 (Fed. Cir. 2010) ...................................................... 44, 47

*Russell Stadelman & Co. v. United States,*
    242 F.3d 1044 (Fed. Cir. 2001) .......................................................... 22

*Safeguard Base Operations, LLC v. United States,*
    989 F.3d 1326 (Fed. Cir. 2021) .......................................................... 59

*Salazar v. King,*
    822 F.3d 61 (2d Cir. 2016) ................................................................ 45

*Second Nature Designs, Ltd. v. United States,*
    586 F. Supp. 3d 1334 (Ct. Int'l Trade 2022) .................................... 42

*Sioux Honey Ass'n v. Hartford Fire Ins. Co.,*
    672 F.3d 1041 (Fed. Cir. 2012) ............................................................ 7

*Thyssenkrupp Steel N. Am., Inc. v. United States,*
    886 F.3d 1215 (Fed. Cir. 2018) .................................................... 23, 28

*United States v. Aegis Sec. Ins. Co. (Aegis I),*
    693 F. Supp. 3d 1328 (Ct. Int'l Trade 2024) ..............................*passim*

*United States v. Aegis Sec. Ins. Co.,*
    No. 25-cv-00051 (Ct. Int'l Trade Sep. 16, 2025), Dkt. 27 ................... 12

*United States v. Am. Home Assurance Co. (AHAC),*
    653 F. Supp. 3d 1277 (Ct. Int'l Trade 2023) ..............................*passim*

*United States v. Am. Home Assurance Co.,*
    151 F. Supp. 3d 1328 (Ct. Int'l Trade),
    *as amended* (Mar. 15, 2016) ............................................................. 61

*United States v. Am. Home Assurance Co.,*
    35 C.I.T. 585 (2011).............................................................. 42, 56, 60

*United States v. Am. Home Assurance Co.,*
    No. 24-1069 (Fed. Cir. Apr. 18, 2024), Dkt. 13 ................................. 10

*United States v. Ataka Am., Inc.,*
    826 F. Supp. 495 (1993) ......................................................... 37, 38, 62

*United States v. Bavarian Motors, Inc.*,
1982 WL 1033446 (Ct. Int'l Trade Aug. 19, 1982) ............................ 39

*United States v. Cherry Hill Textiles, Inc.*,
112 F.3d 1550 (Fed. Cir. 1997) ...................................................... 40

*United States v. Cocoa Berkau, Inc.*,
990 F.2d 610 (Fed. Cir. 1993) ................................................ *passim*

*United States v. Commodities Exp. Co.*,
972 F.2d 1266 (Fed. Cir. 1992) ............................................. *passim*

*United States v. Croft-Mullins Elec. Co.*,
333 F.2d 772 (5th Cir. 1964) .......................................................... 51

*United States v. First City Cap. Corp.*,
53 F.3d 112 (5th Cir. 1995) ........................................................... 49

*United States v. Garan*,
12 F.3d 858 (9th Cir. 1993) ........................................................... 49

*United States v. Gordon*,
78 F.3d 781 (2d Cir. 1996) ............................................................. 48

*United States v. Great Am. Ins. Co.*,
791 F. Supp. 2d 1337 (Ct. Int'l Trade 2011) .................................... 61

*United States v. Great Am. Ins. Co.*,
738 F.3d 1320 (Fed. Cir. 2013) .......................................... 59, 60, 62

*United States v. Ins. Co.*,
83 F.3d 1507 (D.C. Cir. 1996) .................................................. 31, 34

*United States v. Int'l Fid. Ins. Co.*,
273 F. Supp. 3d 1170 (Ct. Int'l Trade 2017) ................................... 61

*United States v. King*,
349 F.3d 964 (7th Cir. 2003) ......................................................... 60

*United States v. Reul*,
959 F.2d 1572 (Fed. Cir. 1992) ...................................................... 34

*United States v. Speed,*
75 U.S. (8 Wall) 77 (1868) ................................................................ 51

*United States v. Vanornum,*
912 F.2d 1023 (8th Cir. 1990) ..................................................... 48, 49

**Statutes**

5 U.S.C. § 706(2)(A) ........................................................................ 45

19 U.S.C. § 580 ........................................................................... 16, 39

19 U.S.C. § 1504(d) ...................................................................... 29, 39

19 U.S.C. § 1505 ................................................................................ 16

19 U.S.C. § 1505(a) ................................................................. 6, 23, 27

19 U.S.C. § 1505(b) .................................................................... *passim*

19 U.S.C. § 1505(d) ............................................................... 30, 35, 36

19 U.S.C. § 1514(a) ........................................................................... 29

19 U.S.C. § 1514(c) ...................................................................... 37, 38

19 U.S.C. § 1675(a)(2)(B) .................................................................... 7

19 U.S.C. § 1675(a)(2)(B)(iii) (1994) ............................................ *passim*

19 U.S.C. § 1677g ......................................................................... 6, 28

28 U.S.C. § 1295(a)(5) ......................................................................... 5

28 U.S.C. § 1581(a) ........................................................................... 41

28 U.S.C. § 1582 ............................................................................... 41

28 U.S.C. § 1582(2) ............................................................................. 4

28 U.S.C. § 1582(3) ............................................................................. 8

28 U.S.C. § 1961 ............................................................................... 16

28 U.S.C. § 2415(a) ...................................................................*passim*

The Customs Courts Act of 1970,
Pub. L. No. 91-271, 84 Stat 274........................................................38

Trade Agreements Act of 1979,
Pub. L. No. 96-39, 93 Stat. 144.........................................................38

Pension Protection Act of 2006,
Pub. L. No. 109-280, 120 Stat. 780......................................................8

Trade Facilitation and Trade Enforcement Act of 2015,
Pub. L. No. 114-125, 130 Stat. 122, 171................................................8

**Regulations**

19 C.F.R. § 24.3a................................................................35, 36, 41

19 C.F.R. § 113.62(a)(1) ...........................................................28, 30

19 C.F.R. § 141.1..............................................................6, 8, 23, 30

19 C.F.R. § 159.1................................................................6, 16, 23

19 C.F.R. § 351.214(e) (1997) ......................................................*passim*

**Other Authorities**

23 Williston on Contracts (4th ed.) ............................................20, 50, 51

Defendant's Answer and Counterclaim,
*Maple Leaf Marketing, Inc. v. United States,*
No. 20-03839, Dkt. 21 ...................................................................42

Defendant's Answer and Counterclaim,
*Second Nature Designs Ltd. v. United States,*
No. 18-00131 (Ct. Int'l Trade Feb. 14, 2023), Dkt. 29 ....................................42

H.R. Rep. No. 103-361, pt. 1 (1993),
*reprinted in* 1993 U.S.C.C.A.N. 2552 ....................................................30

November 15, 2023 Hearing Tr.,
  *United States v. Aegis Sec. Ins. Co.*,
  693 F. Supp. 3d 1328 (Ct. Int'l Trade 2024), Dkt. 128 ..... 20, 45, 57, 61

Restatement (Second) of Contracts § 205 (1981) ................... 20, 44, 53, 56

Restatement (Third) of Suretyship & Guaranty (1996)................. *passim*

S. Rep. No. 96-249 (1979) ....................................................................... 39

Summons, *United States v. Aegis Sec. Ins. Co.*,
  No. 25-cv-00051 (Ct. Int'l Trade Feb. 28, 2025), Dkt. 1 ..................... 12

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Defendant-Appellee Aegis Security Insurance Company states that the following cases may affect or be affected by the decision in this appeal:

1. *United States v. Aegis Security Insurance Co.*, No. 25-cv-00051 (Ct. Int'l Trade filed Feb. 28, 2025)

2. *United States v. XL Specialty Ins. Co.*, No. 25-cv-00154 (Ct. Int'l Trade filed July 17, 2025)

**INTRODUCTION**

In 2003, Presstek Wood Technologies imported a single shipment of Chinese honey. Normally, an importer like Presstek would estimate and deposit antidumping duties—tariffs imposed on foreign goods that are priced lower than the same domestic goods—with U.S. Customs & Border Protection at the point of entry. But under an experimental program created by Congress, Presstek opted to secure the estimated antidumping duties through a bond underwritten by Aegis Security Insurance Company while it petitioned the U.S. Department of Commerce to conduct a review of its duty rate. Under the legislative scheme, that bond replaced the traditional cash deposit "until the completion of the review." *See* 19 U.S.C. § 1675(a)(2)(B)(iii) (1994); 19 C.F.R. § 351.214(e) (1997).[1]

Commerce completed its review in 2008 and transmitted its results to Customs, determining that Presstek owed less than it agreed to pay upon entry. But Customs failed to manually liquidate the duties at the new rate, and the entry was thus deemed liquidated by operation of law in March 2009 at the original rate. Despite the completion of review and

---

[1] These provisions are reproduced for the Court's convenience in the attached addendum.

the liquidated entry, Customs did not try to collect on the bond. It neither issued a bill to Presstek nor made a demand on Aegis. The entry papers were, according to Customs, simply "lost or misfiled." Appx8.

In late 2016, Customs apparently found the documents and demanded payment from Presstek. But Presstek failed to pay. Customs accordingly turned to Aegis. In 2017—nearly 9 years after Commerce completed its administrative review and 8 years after liquidation—Customs first sought payment from Aegis. Aegis declined to pay because the 6-year statute of limitation had run. The Government accordingly sued.

Consistent with the approach it has repeatedly taken before, the Court of International Trade rejected the Government's effort to collect on this stale bond. The Trade Court held that the 6-year statute of limitations barred Customs' claims because the Government's claim accrued at liquidation—the time at which the amount of duties owed became "legally fixed." Appx11. The Trade Court further held that, to the extent the Government could postpone the statute of limitations by delaying its demand, an 8-year delay in issuing a demand is unreasonable and violates the bond contract's implied terms.

The Government challenges both rulings by the Trade Court. First, it argues that the 6-year statute of limitations did not begin to run until it issued a demand on the surety. Second, it contends that no duty of reasonableness constrains when it may issue its demand, and the Government is free to "infinite[ly] delay" sending the demand. Gov't Br. 30.

Neither argument holds water. Under the experimental new shipper bond scheme, the bond replaced cash deposits only until "completion of the review." Once that review was completed and the importer's liability fixed at liquidation, the importer and surety were jointly and severally liable for the duties. At that point "all events necessary to state a claim have occurred." Appx10 (citing *United States v. Commodities Exp. Co.*, 972 F.2d 1266, 1270 (Fed. Cir. 1992)). The demand regulations on which the Government relies discuss only *additional* duties and fees owed—but here no additional duties were ever owed. And even if the Government did have a unilateral ability to extend the statute of limitations by delaying the demand, it would be subject to the implied duty of reasonableness. As this Court has explained, it "cannot … permit a single party to postpone unilaterally and indefinitely

the running of the statute of limitations." *Commodities Exp.*, 972 F.2d at 1271. The Government's argument that there is no restriction on its actions because there is no *express* contract provision on point is one that this Court has repeatedly rejected. *E.g.*, *id.* at 1271 & n.3. And it should do so again. The implied duty of reasonableness binds the Government, and the Government's unexplained 8-year delay violated that duty.

Finally, the impairment of suretyship doctrine provides an independent basis for affirmance. When Customs waited nearly a decade to act, it fundamentally altered the risk Aegis had assumed and destroyed Aegis's ability to recover from its reinsurer, which became insolvent during Customs' prolonged silence. A surety cannot be held liable when the obligee's (here, the Government's) own misconduct has impaired the surety's recourse and transformed the bargain into something the surety never agreed to.

This Court should affirm.

## STATEMENT OF JURISDICTION

The Government sued Aegis under 28 U.S.C. § 1582(2), which vests exclusive jurisdiction over bond recovery actions in the Trade Court. Appx5. The Trade Court entered final judgment on June 11, 2025. Appx1.

The United States timely appealed. Appx20. This Court has jurisdiction under 28 U.S.C. § 1295(a)(5).

## STATEMENT OF THE ISSUES

**I.** Did the Court of International Trade correctly hold that Customs' claim is barred by the 6-year limitations where Customs sued Aegis 14 years after the completion of new shipper review and 13 years after liquidation?

**II.** Did the Court of International Trade correctly hold that the bond contract contained an implied duty requiring Customs to issue a demand in a reasonable time?

**III.** Did Customs' delay in issuing a demand and its changed position on its obligation to timely act impair Aegis's suretyship status, discharging Aegis of any obligation to pay under the bond?

## STATEMENT OF THE CASE

### A. Statutory and Regulatory Background

The U.S. Department of Commerce imposes duties or fees on imports to prevent the practice of dumping—bringing foreign goods into the United States at prices below the prices used in the home market. Typically, an importer must estimate and pay those antidumping duties

on the imported merchandise at the time of entry. *See* 19 U.S.C. § 1505(a); *see also* 19 C.F.R. § 141.1.

Entries subject to antidumping duties are periodically subject to an administrative review of the underlying antidumping duty order conducted by Commerce. Upon completion of the administrative review, Commerce transmits the results to Customs so that Customs can liquidate the subject entries with the assessment of antidumping duties at the final assessment rate. 19 C.F.R. § 159.1. Upon liquidation, Customs either demands payment for additional duties owed, with interest, or issues refunds for overpayment of estimated duties, with interest. 19 U.S.C. §§ 1505(b), 1677g. If Customs fails to manually liquidate the entries owed within the time period prescribed by statute (in this case, 6 months after the removal of suspension of liquidation of the entry pending the administrative review), then an entry is deemed liquidated as a matter of law at the rate asserted by the importer. 19 U.S.C. § 1504(d). No additional duties are due if an entry is deemed liquidated because the rate asserted by the importer at the time of entry is the same as the final assessment rate.

This case centers on an experiment with a surety bond program to secure duties, fees, and taxes owed on imported products during a new shipper review. *See Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1048 (Fed. Cir. 2012). "New shippers—shippers who were not exporting subject merchandise when the current duty rate was set—can petition the U.S. Department of Commerce … for a separate and individualized tariff rate." *United States v. Aegis Sec. Ins. Co.* (*Aegis I*), 693 F. Supp. 3d 1328, 1331 (Ct. Int'l Trade 2024); *see also* 19 U.S.C. § 1675(a)(2)(B). That process is called a new shipper review.

Congress authorized U.S. Customs & Border Protection to accept bonds instead of cash deposits for new shippers of merchandise "until the completion of the [new shipper] review." *See* 19 U.S.C. § 1675(a)(2)(B)(iii) (1994); 19 C.F.R. § 351.214(e) (1997). Upon the "completion of the review," both the importer and the surety became jointly and severally liable to Customs for the duties. 19 U.S.C. § 1675(a)(2)(B)(iii) (1994); 19 C.F.R. § 351.214(e) (1997); *see Ins. Co. of the West v. United States*, 243 F.3d 1367, 1370 (Fed. Cir. 2001) ("A surety bond creates a three-party relationship, in which the surety becomes liable for the principal's debt or duty to the third party obligee (here, the government).").

It is undisputed that a claim for breach of the bond's contract obligations is subject to a 6-year statute of limitations. Gov't Br. 15-16 (citing 28 U.S.C. § 2415(a)). That statute of limitations governs only the surety's obligations. Because the importer's obligation to pay is rooted in the statute, 28 U.S.C. § 1582(3), it remains obligated to pay indefinitely. It is likewise undisputed that the bond contains implied duties that bind the Government. Gov't Br. 25-26.

The bond program was short lived. In 2006, Congress suspended the program and then eliminated it in 2016. *See* Pension Protection Act of 2006, Pub. L. No. 109-280, § 1632, 120 Stat. 780, 1165-66 (suspending bonding option); Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. No. 114-125, § 433, 130 Stat. 122, 171. Estimated duties now must, once again, be paid in cash upon entry. *See* 19 C.F.R. § 141.1.

**B. Customs' Implementation of the Bond Program and Its Attempts to Recover on Old Bonds**

Customs struggled to implement the bond program, and it repeatedly failed to collect on bonds when they were due. Both the courts and Customs have acknowledged this fact: "When asked at oral argument why Customs waited so long to seek payment from the importers, or from the surety, counsel stated: '[I]t seems that it slipped through the cracks

and nobody knew at Customs at the port level that … these duties needed to be collected on.'" *United States v. Am. Home Assurance Co.* (*AHAC*), 653 F. Supp. 3d 1277, 1281 n.11 (Ct. Int'l Trade 2023); *see also* Appx8-9 ("Customs delayed in issuing the bill because it had lost or misfiled the relevant documents").

Many years later, Customs began to attempt to recover on these bonds, but the Trade Court has repeatedly rejected those efforts as barred by the statute of limitations and the bonds' implied contract terms.

**1.** In *AHAC*, for example, U.S. businesses imported preserved mushrooms from China between February 2001 and January 2002. 653 F. Supp. 3d at 1280. The importers posted bonds with Customs to cover these entries during the completion of new shipper review. *Id.* In February 2003, after the completion of review, the mushroom entries were deemed liquidated. *Id.* "Then, more than a decade passed," during which time "Customs took no action to collect on the debts owed by the importers." *Id.* at 1281. Not until 11 years after liquidation did Customs send bills to the importers. *Id.* And Customs first demanded payment from the surety 12 years after liquidation, which the surety declined to

pay. *Id.* at 1281-82. Sixteen years after liquidation, Customs sued the surety. *Id.* at 1282.

The Trade Court concluded that the suit was barred because the statute of limitations "began to run at liquidation when all of the events necessary to bring suit for the duties owed had occurred." *Id.* at 1293. It further explained that Customs had failed to make a demand in a reasonable time, so "even if the court were to credit Customs' claim that its action for breach of contract accrued thirty days after AHAC failed to pay on Customs' demands, the court would still find Customs' claims time-barred." *Id.* "[C]ourts have long disfavored rewarding a party for taking advantage of a delay in the commencement of a statute of limitations when the delay is caused by that party's unilateral act." *Id.* The Government filed a notice of appeal but later voluntarily dismissed the appeal. *United States v. Am. Home Assurance Co.*, No. 24-1069 (Fed. Cir. Apr. 18, 2024), Dkt. 13 (order of dismissal).

**2.** In 2024, the Government sued Aegis in a separate lawsuit under the same theory. *Aegis I*, 693 F. Supp. 3d at 1331. There, the importer brought in Chinese garlic subject to anti-dumping duties. *Id.* at 1332. The importer obtained a bond to cover the applicable duties while it

10

underwent a new shipper review. *Id.* at 1332-33. After the review was completed, the garlic entries were deemed liquidated by operation of law on November 4, 2006. *Id.* at 1333. But "[f]or nearly eight years after the deemed liquidation, nothing happened." *Id.* Customs finally billed the importer in October 2014. *Id.* When the importer did not pay, it waited almost another year to bill to the sureties (including Aegis) in June 2015. *Id.* Aegis refused to pay. *Id.*

Though it concluded that Customs had sued within the statute of limitations, *id.* at 1338, the Trade Court held that Customs failed to issue the demand within a reasonable time, *id.* at 1339. The Court reasoned that "[c]ontracts with a demand requirement — like the one here — contain an implied reasonable time requirement for making demand," which Customs had failed to satisfy by waiting nearly 9 years after liquidation before sending a demand to Aegis. *Id.* at 1338. It specifically noted that the "Government conceded at oral argument that the reasonableness requirement exists and applies here." *Id.* at 1335. The Government never appealed.

**3.** The Government has continued attempting to recover on stale bonds, despite the Trade Court's rulings. In addition to this case, the

Government sued Aegis yet again in February 2025. *See, e.g.*, *United States v. Aegis Sec. Ins. Co.*, No. 25-cv-00051 (Ct. Int'l Trade Feb. 28, 2025), Dkt. 1. There, Customs waited 14 years from liquidation to issue Aegis a demand and nearly 20 years to file suit. *Id.* That case is still pending but has been stayed during this appeal. *Aegis Sec. Ins. Co.*, No. 25-cv-00051 (Ct. Int'l Trade Sep. 16, 2025), Dkt. 27.

## C.    Factual Background

On October 20, 2003, Presstek imported honey from China that was subject to an antidumping duty order. Appx715 ¶¶ 7, 9, 10; Appx726; Appx723-724. Opting to take advantage of the new shipper program, Presstek submitted a bond in lieu of cash payment to Customs pending "completion of the [new shipper] review." 19 U.S.C. § 1675(a)(2)(B)(iii) (1994); Appx3-4 & n.1. Aegis underwrote that single transaction bond with Presstek and thus "agreed to be jointly and severally liable to pay any duties, taxes, and subsequent charges demanded by Customs, up to the limit of liability of $100,700, regarding the subject entry imported by Presstek." Appx3-4. That limit of liability was based on Presstek's estimate that the entry was subject to antidumping duties at a rate of

183.8% ad valorem, which would equal $100,634.18. Appx3-4; Appx732; Appx35-36 ¶ 40.

Commerce then commenced its administrative review of the antidumping duty rate. Appx4. In 2008, following the conclusion of administrative review and subsequent judicial review, Commerce concluded that the antidumping duty was 101.48%, which would yield an actual antidumping duty liability of $57,489.60. Appx4. Customs, however, did not timely liquidate the subject entry. Appx4. The subject entry was thus deemed liquidated on March 19, 2009, at the amount Presstek asserted at the time of entry: $100,634.18. Appx4.

More than seven years passed before Customs first issued a bill to Presstek. Appx5. Customs concedes that the reason for this delay was because it "lost or misfiled the entry papers." Gov't Br. 11. It was "not because of any action by Aegis." Appx9. Presstek failed to pay. Appx5.

On February 6, 2017, Customs first demanded payment from Aegis. Appx5. In response, Aegis filed a protest of Customs' demand based, in part, on the fact that the applicable 6-year statute of limitations had run. Appx5 n.2. About a year later, in April 2018, Customs granted Aegis's protest on other grounds, finding that the reliquidation of the entry was

improper but declining to determine whether the statute of limitations on the demand had run. *See* Appx5 n.2; Appx35 ¶ 40; Appx718 ¶ 29. Customs then delayed another year before issuing an additional demand to Aegis. Appx5. Aegis continued to decline payment, so Customs sued Aegis in the Court of International Trade.

Customs' delayed action on the bond created considerable risk for Aegis and its reinsurance coverage. Relevant here, Aegis had a reinsurance treaty with Lincoln General Insurance Company, which covered claims for less than $1 million and litigation defense costs from disputes involving Customs' claims made on bonds in the programs. Appx416; Appx429; Appx424-425. To further protect itself from loss, Aegis had an indemnification and hold harmless agreement with Lincoln General's parent company, Kingsway Financial. Appx709-712.

After more than 6 years of Customs' inaction on the bonds, Aegis lost its reinsurance coverage. Lincoln General became insolvent, and on November 5, 2015, the company was liquidated by the Commonwealth Court of Pennsylvania. Appx760-767. As part of the liquidation, (i) all of Lincoln General's policies or contracts of insurance would terminate no later than 30 days after the Court's order, (ii) all claims under such

policies would have to be submitted by July 6, 2016, or the claimant would not be able to participate in the distribution of the assets of Lincoln General, and (iii) all litigation against Lincoln General was stayed. Appx760-767. Until Lincoln General dissolved, it would have been the entity liable for any claims against the bond. Appx416. But at that time, Customs had not made any effort to recover on the bond from Aegis.

Once Customs began its belated attempts to collect on the bond, Aegis sought to enforce certain indemnification rights against Kingsway Financial. Kingsway responded by taking Aegis to court. Appx380-381. As a result of the uncertainties and costs associated with litigation, Aegis and Kingsway entered an agreement in January 2020, with Kingsway agreeing to pay Aegis a one-time settlement amount of $0.9 million and to reimburse Aegis for 60 percent of future losses Aegis could sustain in connection with the bonds in the customs bond program. Appx778-779. Aegis thus faces considerable risk from Customs' collection efforts that it would not have faced had Customs attempted to collect on the bond in a timely manner.

### D.    Procedural Background

Customs sued Aegis on November 22, 2022, seeking to "recover unpaid duties and interest pursuant to 19 U.S.C. § 1505 in the total amount of $100,700.00, plus pre-judgment interest pursuant to 19 U.S.C. § 580, equitable interest, and post-judgment interest pursuant to 28 U.S.C. § 1961." Appx714 ¶ 1. Aegis moved for summary judgment, arguing that the 6-year statute of limitations under 28 U.S.C. § 2415(a) had expired, that Customs' delay was unreasonable, and that Customs' actions had impaired Aegis's suretyship. Appx5; Appx9. Customs opposed, and later cross-moved for summary judgment, arguing that Aegis was liable for the duties and interest on the bond as a matter of law. Appx5; Appx9-10.

The Trade Court granted summary judgment in favor of Aegis. It held that Customs had failed to sue within the statute of limitations and that it had unreasonably delayed. Appx9; Appx13. Finding the lawsuit time-barred, the court reasoned that all events necessary to fix the surety's liability occurred at the time of liquidation, because it is "the final computation or ascertainment of duties." Appx11 (quoting 19 C.F.R. § 159.1). The court rejected the Government's argument that the statute

16

of limitations ran from the demand because doing so would "hand Customs complete authority to indefinitely postpone the statute of limitations, particularly when the 6-year statute of limitations set out in 28 U.S.C. § 2415(a) aims to limit the government's litigation advantage, not just prevent stale claims." Appx11-12. The court concluded that because the subject entry was deemed liquidated on March 19, 2009, the limitations period expired on March 19, 2015—more than 7 years before the government filed suit on November 22, 2022—and the action was therefore time-barred. Appx13.

The court separately held that Customs breached the bond contract by failing to issue a demand on the surety within a reasonable time. Appx9. The court found that the implied duty of good faith and fair dealing—inherent in every contract—imposed a reasonableness requirement on Customs' conduct. Appx7-8. The court rejected Customs' arguments that no time constraint applied, noting that taken to its logical conclusion, the Government's position would allow Customs to delay for decades while interest accrued and reinsurers disappeared. Appx9. "Such a system would be illogical and highlights the very reason why the implied duty of good faith and fair dealing is inherent in all

17

contracts: to prevent such unreasonable behavior." Appx9. Because the Government failed to demonstrate that Customs' 8-year delay was reasonable, the court concluded that Customs breached the bond contract and could not recover under it. Appx9.

The Trade Court declined to reach Aegis's impairment of suretyship defense. Appx13 n.10. The Government appealed.

## SUMMARY OF ARGUMENT

**I.** The Trade Court correctly held that the 6-year statute of limitations under 28 U.S.C. § 2415(a) bars this lawsuit. A cause of action on a bond accrues when all events necessary to state a claim have occurred. *United States v. Cocoa Berkau, Inc.*, 990 F.2d 610, 613 (Fed. Cir. 1993). Here, after completion of new shipper review and liquidation in 2009, Customs had the right to state a claim against Aegis. 19 U.S.C. § 1675(a)(2)(B)(iii) (1994). Yet Customs did not sue until 13 years later in 2022.

The Government's sole argument to the contrary is that accrual runs from its demand on the surety in 2017. But the statutory provision on which the Government relies, 19 U.S.C. § 1505(b), does not support this argument. To start, the plain language of 19 U.S.C. § 1505(b) does

not require a demand for payment before Customs' cause of action accrues for collecting duties on entries liquidated under the deemed liquidation statute. Indeed, the statute does not even contain the words "surety," "breach," or "demand." Where, as here, no provision of the bond or applicable statute conditions the Government's right to sue on a prior demand, the statute of limitations does not run from the demand. Adopting the Government's position would allow Customs to extend the limitations through its own inaction—precisely the outcome this Court warned against in *Commodities Export*, 972 F.2d at 1271-72. Moreover, Section 1505(b) applies only when "additional duties" are found due at liquidation. Here, no additional duties were due.

**II.** The Trade Court correctly held that Customs breached an implied duty of reasonableness by waiting nearly 8 years to demand payment from Aegis under the bond. Appx9. Tellingly, the Government does not dispute that if there is a duty to act within a reasonable time, Customs violated that duty here by waiting 8 years to issue a demand with no excuse to justify the delay. That argument is thus waived.

The Government's arguments to the contrary have no merit. The Government argues that the Trade Court erred by holding that "a bond

contract contains an implied reasonableness requirement." But black letter contract law establishes exactly this point. Where, as here, a contract requires one party to perform an act but does not specify a time for performance, the duty of reasonableness encompasses a duty to perform "with reasonable expediency the thing agreed to be done." 23 Williston on Contracts § 63:24 (4th ed.); *Commodities Exp.*, 972 F.2d at 1271. Indeed, Customs itself conceded in an earlier iteration of the litigation "the implied reasonableness contractual term applies." November 15, 2023 Hearing Tr. at 57:16-20, *Aegis I*, 693 F. Supp. 3d 1328, Dkt. 128. The Government's new argument that—unless there is an express statutory deadline, it has infinite time to issue a demand—inverts the analysis for implied duties and misunderstands basic contract law. *E.g.*, 23 Williston on Contracts § 63:24. And the Government's argument that "merely negligent conduct" can never breach the implied duty of reasonableness is likewise belied by clear caselaw. "[L]ack of diligence and slacking off" and "failure to cooperate in the other party's performance" are quintessential breaches of this duty. Restatement (Second) of Contracts § 205 cmt. *d* (1981). Customs violated the implied duty of reasonableness.

**III.** The impairment of suretyship doctrine independently supports the Trade Court's judgment. When an obligee (here, the Government) fundamentally alters the risks imposed on a secondary obligor (here, the surety, Aegis) or impairs its recourse, the secondary obligor is discharged from its obligations. *See* Restatement (Third) of Suretyship & Guaranty § 37 (1996). At the time Aegis issued and Customs approved the bond, the parties understood that a 6-year statute of limitations would expire no later than 2015 and that Customs would act within a reasonable time. Customs has now unilaterally modified the contract by claiming that no time limit constrains its collection efforts. This imposes risks on Aegis "fundamentally different from those imposed pursuant to the transaction prior to modification," Restatement (Third) of Suretyship & Guaranty § 41(b)(i), including that the importer now has the financial backing of the surety in perpetuity. Customs' delay also impaired Aegis's right of recourse against both Presstek and its reinsurer. Aegis's obligations under the bond should therefore be discharged.

## STANDARD OF REVIEW

The Court reviews de novo the Trade Court's grant of summary judgment. *Russell Stadelman & Co. v. United States*, 242 F.3d 1044, 1048 (Fed. Cir. 2001).

## ARGUMENT

### I. The Trade Court Correctly Held That the 6-Year Statute of Limitations Bars this Lawsuit.

The Government acknowledges that a 6-year statute of limitations applies to bar a lawsuit against a surety, like Aegis, for the collection of debts owed under a bond. Gov't Br. 15-16; *see also* 28 U.S.C. § 2415(a) ("every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues"). The Government sued Aegis on November 22, 2022. Gov't Br. 9. The question is whether the Government's cause of action accrued before November 22, 2016. It did.

### A. Customs' cause of action accrued at least 13 years before it sued Aegis.

This Court has held that "it is … well settled that the date of accrual occurs at the time of the breach of the bond." *Cocoa Berkau*, 990 F.2d at 613. "In order to determine when the entry bond was breached,

we look to the language of the bond stipulating the relevant obligations of the bond principal and its surety." *Id.*

Here, Presstek breached its obligation by failing to pay final, assessed duties to Customs at the completion of the new shipper review. *See Thyssenkrupp Steel N. Am., Inc. v. United States*, 886 F.3d 1215, 1218 (Fed. Cir. 2018) ("An importer becomes liable for any antidumping duty as soon as the foreign merchandise arrives in the United States." (citing 19 C.F.R. § 141.1(a))); *see* 19 U.S.C. § 1675(a)(2)(B)(iii) (1994); 19 C.F.R. § 351.214(e) (1997). "Only at *liquidation* is the amount of the debt for duties owed by the importer finally computed and legally fixed." *AHAC*, 653 F. Supp. 3d at 1289 (emphasis in original); *see id.* at 1290 n.20 ("*Liquidation means the final computation or ascertainment of duties* on entries for consumption." (emphasis in original) (quoting 19 C.F.R. § 159.1)). Aegis is jointly and severally liable under the bond for that breach. Appx726. Although Presstek ordinarily would have been required to deposit estimated duties with Customs immediately "at the time of entry," 19 U.S.C. § 1505(a), the experimental bond program allowed Presstek to temporarily secure its eventual antidumping liability by submitting a bond with Customs, but only "until the completion of the

[new shipper] review." *See* 19 U.S.C. § 1675(a)(2)(B)(iii) (1994); 19 C.F.R. § 351.214(e) (1997). Upon completion of the review, the bond privilege expired and the importer was required to pay final, assessed duties on the entries covered by the review. 19 U.S.C. § 1675(a)(2)(B)(iii) (1994); 19 C.F.R. § 351.214(e) (1997).

The review was completed and the duties were deemed liquidated on March 19, 2009. Appx4. Presstek's failure to pay final, assessed duties to Customs at that time was breach. Appx13. The Government's cause of action against Presstek and Aegis thus had fully accrued by 2009—13 years before Customs sued Aegis. Appx13; *see also, e.g.*, *AHAC*, 653 F. Supp. 3d at 1288 (statute of limitations runs at liquidation).

## B. The statute of limitations does not run from the demand.

The Government agrees, as it must, that the cause of action accrues at the time the bond is breached. Gov't Br. 16. But the Government disputes *when* the bond was breached. The Government contends that Aegis breached the bond when Customs issued the demand to Aegis, and Aegis failed to pay. Gov't Br. 15-20. The Government's theory is that the statute of limitations runs from the date of the demand on the surety— here, February 6, 2017. Gov't Br. 30. Per the Government, that means

that Customs' November 22, 2022 lawsuit was timely because it was brought before the 6-year statute of limitations expired on February 6, 2023. *See id.*

The Government is wrong. The plain language of 19 U.S.C. § 1505(b) does not require a demand for payment before Customs' cause of action accrues for collecting duties on entries that were deemed liquidated:

> The Customs Service shall collect any increased or additional duties and fees due, together with interest thereon, or refund any excess moneys deposited, together with interest thereon, *as determined on a liquidation or reliquidation.* Duties, fees, and interest *determined to be due upon liquidation or reliquidation* are due 30 days after issuance of the bill for such payment. Refunds of excess moneys deposited, together with interest thereon, shall be paid within 30 days of *liquidation or reliquidation.*

19 U.S.C. § 1505(b) (emphasis added).

The first sentence of Section 1505(b) explains that duty liability is "*determined on a liquidation or reliquidation.*" (emphasis added). And the second sentence makes clear that duties are "*determined to be due upon liquidation,*" in this case, by deemed liquidation. *Id.* (emphasis added). The third sentence then states that refunds shall be paid within 30 days of "*liquidation or reliquidation.*" *Id.* (emphasis added). Thus, the event of

liquidation or reliquidation, not a demand by Customs, establishes the importer's and surety's liability for duties (and Customs' liability for refunds).

The Government argues that the second sentence of Section 1505(b) means that the cause of action accrues "after issuance of the bill for such payment." Gov't Br. 13. But that language simply "provides for notice to be given to the importers of the amount of the debt and also of the thirty-day grace period for payment." *AHAC*, 653 F. Supp. 3d at 1290 n.20 ("Duties, fees, and interest ... are due 30 days after issuance of the bill for such payment." (quoting 19 U.S.C. § 1505(b)). Indeed, it does not even contain the words "surety," "breach," or "demand."

To reinforce the point, Congress used the mandatory term "shall" in Section 1505(b) solely in connection with Customs' duty to collect interest and its duty to refund excess monies deposited "*as determined on a liquidation or reliquidation.*" (emphasis added). The mandatory "shall" is not used in connection with Customs' issuance of a bill. Nothing in Section 1505(b) even requires Customs to send a bill. Section 1505(b) therefore allows for the collection of duties and interest thirty days after billing the duties determined to be due on liquidation but does not create

a new cause of action for the collection of liquidated duties at the time of Customs' later ministerial "demand" for payment. Although billing may be a self-imposed prerequisite to collecting interest on any duties determined to be due on liquidation, no statute or regulation requires billing as a prerequisite to filing a suit for collection of the actual duties determined to be due on liquidation.

The Government's only argument for an accrual date running from the demand relies on demand language that relates to "additional duties" that are not relevant here. *See* Gov't Br. 16-19. The statutory scheme contemplates two types of moneys owed to Customs. The first set is the initial estimated amount of duties and fees due at the time of entry. 19 U.S.C. § 1505(a) ("[T]he importer of record shall deposit with the Customs Service at the time of entry, or at such later time as the Secretary may prescribe by regulation … the amount of duties and fees estimated to be payable on such merchandise."). Under the temporary bond program, Presstek was able to post a bond in lieu of a cash deposit for those estimated duties "until the completion of the review." 19 U.S.C. § 1675(a)(2)(B)(iii) (1994). Upon completion of review, however, Presstek was required to pay final, assessed duties to Customs. *See id.*

The second set involves the "increased or additional duties and fees due." 19 U.S.C. § 1505(b) ("The Customs Service shall collect any *increased or additional* duties and fees due, together with interest thereon, or refund any excess moneys deposited, together with interest thereon, as determined on a liquidation or reliquidation." (emphasis added)); 19 C.F.R. § 113.62(a)(1) ("the obligors (principal and surety, jointly and severally) agree to … [p]ay as demanded by CBP, all *additional* duties, taxes, and charges *subsequently* found due, legally fixed, and imposed on any entry secured by this bond" (emphasis added)). Those *additional* duties "determined to be due upon liquidation or reliquidation are due 30 days after issuance of the bill for such payment." 19 U.S.C. § 1505(b); *Thyssenkrupp*, 886 F.3d at 1218 (relying on 19 U.S.C. § 1505(b) and explaining that "[a]fter liquidation, Customs generally refunds to the importer the difference between the entry deposit and a smaller liquidation amount or bills the importer for the difference between the entry deposit and a larger liquidation amount."); *see also* 19 U.S.C. § 1677g.

Both parties agree that Aegis did not owe any increased or additional duties and fees found due at liquidation. *See* Gov't Br. 8

(acknowledging the duties amounted to approximately $100,700.00 at deemed liquidation). Here Customs failed to manually liquidate the entry owed within the time period prescribed by statute, so the entry was deemed liquidated as a matter of law at the amount asserted by the importer. 19 U.S.C. § 1504(d). That deemed liquidation is "final and conclusive upon all persons (including the United States and any officer thereof)." 19 U.S.C. § 1514(a); Appx10-11. When an entry is deemed liquidated, the cash deposit rate is equal to the final assessment rate. 19 U.S.C. § 1504(d) (entries that are deemed liquidated are liquidated "at the rate of duty, value, quantity, and amount of duty asserted by the importer of record"). Thus, when the cash deposit is due, there are no "additional duties" to be demanded. That is equally true here even though there was a bond instead of a cash deposit at the time of entry.

The Government may attempt to argue that this means Customs has no statutory mechanism to collect on the bond, but that is simply not true. Customs could have timely sued to collect on the bond. Moreover, that Congress did not amend 19 U.S.C. § 1675(a)(2)(B)(iii) (1994) to further protect Customs' interests when new shippers elect to use bonds instead of cash to secure their antidumping liability does not change the

29

conclusion that the demand language for "*additional* duties, taxes, and charges *subsequently* found due, legally fixed, and imposed on any entry secured by this bond" has no application when entries are deemed liquidated. 19 C.F.R. § 113.62(a)(1) (emphases added).[2]

The Government also is wrong on the bond language. It argues that the "pay as demanded" language, incorporated from 19 C.F.R. § 113.62(a)(1) into Aegis's bond, conditioned Aegis's liability on Customs demanding payment. Gov't Br. 16. Customs' bill to the importer (or demand on the surety) after a deemed liquidation is not an event

---

[2] Even for additional duties, which are not at issue in this case, the best reading of the statute gives rise to liability at liquidation. The statute, for example, provides importers with a 30-day grace period after liquidation to pay the unpaid balance but then the debt immediately starts accruing interest. 19 U.S.C. § 1505(d). This provision reflects the fact that the importer's and surety's liability is fixed at the time of liquidation. *Thyssenkrupp*, 886 F.3d at 1218 (citing 19 C.F.R. § 141.1(a)); *AHAC*, 653 F. Supp. 3d at 1289, 1290 n.20. If Customs were correct that importers and sureties owe nothing until a demand is made, which it is not, then the statute would say that interest starts running from the date of Customs' bill to the principal. Moreover, the legislative history to the 1993 amendment makes clear that Congress added the demand and 30-day period to "provide equity in the collection and refund of duties and taxes, together with interest, by treating collections and refunds equally," not to indefinitely extend the liability of the importer or surety until such time as Customs issued a bill. H.R. Rep. No. 103-361, pt. 1, at 140 (1993), *reprinted in* 1993 U.S.C.C.A.N. 2552, 2690.

necessary to fix the liability of a defendant and is not a necessary

predicate to breach.

> Where a demand is necessary to perfect a cause of action, the statute of limitations does not commence to run until the demand is made… Where, on the other hand, a call for performance is not an essential element of a cause of action, the running of the statute does not await a demand.

*Nyhus v. Travel Mgmt. Corp.*, 466 F.2d 440, 452-53 (D.C. Cir. 1972);

*accord United States v. Ins. Co.*, 83 F.3d 1507, 1510 (D.C. Cir. 1996), *as*

*amended* (June 19, 1996). Here, Customs' bill—its "call for

performance"—was not "an essential element of the cause of action, [so]

the running of the statute [did] not await a demand." *See Cocoa Berkau*,

990 F.2d at 613-14 (holding that non-mandatory bond language

regarding Customs' demand, the surety "shall pay to [Customs] such

amounts as liquidated damages *as may be demanded*," was insufficient

to establish Customs' demand for payment as the trigger for the surety's

breach and the Government's cause of action and "[t]he accrual of a right

of action should occur upon default by a liable party, not when a creditor

takes steps to procure performance" (emphasis added) (quotation marks

omitted)); *Nyhus*, 466 F.2d at 453 ("Standing alone, the words 'on

demand' do not import a condition precedent to a right of action on the

instrument, but merely describe a debt that is due when made."); *AHAC*, 653 F. Supp. 3d at 1290 n.20 (Customs' bills, "even though provided for both in [19 U.S.C.] § 1505(b) and in the regulations, are not a condition precedent for the creation of an importer's debt for duties."). Rather, "[t]he bill, then is a notice of the amount of the debt and notice of the statutorily directed thirty-day grace period before interest begins to run." *AHAC*, 653 F. Supp. 3d at 1290 n.20. "That Customs understands the bill as nothing more than a notice of the debt can be seen from the wording of the bills that it sent to [the importers:] … '[t]his bill is a notice of debt *currently owed* to [Customs.]'" *Id*. "In other words, Customs has always believed it was 'collecting' a debt already incurred." *Id*.

Where, as here, "[t]he bond agreement does not require Customs to demand payment" and "[n]o statute requires Customs to give notice of demand," the statute of limitations does not run from the demand. *Commodities Exp.*, 972 F.3d at 1271. In *Commodities Export*, on February 22, 1983, Customs conducted an inspection of the defendant, Commodities Export Company's ("Commodities") warehouse and discovered that Commodities had failed to properly mark certain pieces of inventory, which breached the bond. *Id*. at 1272. Customs issued a

demand for payment a month later. *Id.* at 1268. Considerable back and forth between the parties ensued but Customs did not file a lawsuit until March 17, 1989. *Id.* This Court held that lawsuit was untimely under the 6-year statute of limitations. *Id.* at 1272. Customs argued that the statute of limitations accrued after Customs followed its own regulations which required it to issue a demand and wait 60 days for the breaching party to pay. *Id.* at 1270. But this Court rejected that argument, explaining that it could not permit "a single party to postpone unilaterally and indefinitely the running of the statute of limitations." *Id.* at 1271. The statute of limitations commenced before any demand issued.

The case law on which Customs relies further underscores that the statute of limitations here does not turn on a demand for additional duties. Gov't Br. 19-20. In *United States v. Insurance Co.*, the D.C. Circuit explained that a demand was necessary to trigger the statute of limitations but only because the relevant provision stated that "the Secretary of Labor *shall make a written demand* upon the Surety to pay such sums as the said Secretary shall deem necessary to discharge or to secure all or any of the obligations described in this bond." 83 F.3d at

1510 (emphasis in original); *see also United States v. Reul*, 959 F.2d 1572, 1576 (Fed. Cir. 1992) (bond required that the principal "shall redeliver … demand [by Customs] … any and all merchandise found not to comply" (quotation marks omitted)). No such language appears in the bond in this case.

Nor is Aegis liable only in the event of the importer's default. Under the terms of the bond here, Aegis and Presstek agreed to be jointly and severally liable for any duties owed to Customs, so breach turns on when *Presstek* owed the bonded money to Customs. Appx3-4; Appx726; *cf. Cocoa Berkau*, 990 F.2d at 614 ("Absent an agreement between the parties, the surety incurs derivative liability when the principal breaches the bond"). While ordinarily Presstek would have been required to deposit that money with Customs, the experimental bond program allowed Presstek to avoid that requirement during the review period by depositing bond. 19 U.S.C. § 1675(a)(2)(B)(iii) (1994). Once that review period expired and the entry was liquidated, Presstek (and Aegis) were liable to Customs, and "all events necessary to fix the liability of a defendant have occurred." *Cocoa Berkau*, 990 F.2d at 613.

**C. The Government's position would undermine the regulatory scheme by permitting Customs to unilaterally delay bond recovery lawsuits.**

**1.** The Government argues that the Trade Court's holding is "inconsistent with the general structure that governs the process for enforcing a bond." Gov't Br. 20. The Government contends that failing to require a demand would "undermine[] 19 U.S.C. §§ 1505(b) and (d) and 19 C.F.R. § 24.3a, which entitle sureties to a 30-day grace period for payment." Gov't Br. 22. Section 1505(b) provides that "[t]he Customs Service shall collect any *increased or additional* duties and fees due, together with interest thereon … as determined on a liquidation or reliquidation" and that those "[d]uties, fees, and interests determined to be due upon liquidation or reliquidation are due 30 days after issuance of the bill for such payment." (emphasis added.) Section 1505(d) refers back to "the 30-day period specified in subsection (b)." But the text of Section 1505(b) is clear that the 30-day grace period applies only for "increased or additional duties and fees due," not the amount originally estimated upon entry. It has no application here.

Moreover, the Government is wrong that this provision "entitle[s] sureties to a 30-day grace period." Gov't Br. 22. Even under the

Government's reading, liability would arise for a surety after Customs issues a bill to the *importer*. So even if importers could avoid interest by paying the duties within the grace period, that is not true for sureties, who do not receive the bill within the 30-day grace period. *Compare* 19 C.F.R. § 24.3a(d)(1) ("The principal will be notified at the time of the initial billing, and every 30 days after the due date until the bill is paid or otherwise closed."), *with id.* § 24.3a(d)(2) (Customs "will report outstanding bills on a Formal Demand on Surety for Payment of Delinquent Amounts Due, for bills more than 30 days past due (approximately 60 days after bill due date), and every month thereafter until the bill is paid or otherwise closed.").

Finally, Section 1505(d) is clear that when an unpaid balance bears interest, it starts bearing interest "from the date of liquidation or reliquidation until the full balance is paid." 19 U.S.C. § 1505(d). That interest is calculated from liquidation rather than from the demand indicates that a party's liability is fully established at liquidation. *See AHAC*, 653 F. Supp. 3d at 1290 n.20 ("The bill, then, is a notice of the amount of the debt and notice of the statutorily directed thirty-day grace period before interest begins to run."). And if interest against the surety

accrues upon liquidation or reliquidation, so too does the Government's cause of action.

The Government next insists that the demand is key to the Government's cause of action because demand starts the surety's opportunity to protest. Gov't Br. 22-23 (citing 19 U.S.C. § 1514(c)(3)). But in *United States v. Ataka America, Inc.*, the Trade Court explained that "Section 1505(c) … gives the United States the right to sue to collect liquidated duties whether a protest proceeding is pending or not." *See* 826 F. Supp. 495, 502 (1993) (emphasis added). "[T]he right to sue" is "immediate" and it "is not delayed by administrative protests." *Id.* So the procedural route to protest has no bearing on when the Government can commence its claim.

In reaching its decision, the *Ataka* court relied on this Court's holding in *Cocoa Berkau. Id.* (citing *Cocoa Berkau*, 990 F.2d at 616). There, this Court explained that a surety was not required to file a mitigation proceeding before Customs could sue to recover under a similar provision. *Id.* As noted by the *Ataka* court, "[t]hese discretionary and informal proceedings need not be resolved in order for the

government to recover liquidated damages under a bond through court action." *Id.* The same is true here.

Moreover, the legislative history to 19 U.S.C. § 1514(c)(2) makes clear that Congress did not intend for the surety's opportunity to file a protest to be the first opportunity for the government to file a collection action. Under an earlier version of the statute, sureties could file protests within 90 days of liquidation or reliquidation. The Customs Courts Act of 1970, Pub. L. No. 91-271, § 207, 84 Stat 274, 285 ("A protest of a decision, order, or finding described in subsection (a) shall be filed with such customs officer within ninety days after but not before ... notice of liquidation or reliquidation ...."). But Congress amended the statute in 1979 to extend the deadline for sureties to file protests to 90 days from the date of demand. Trade Agreements Act of 1979, Pub. L. No. 96-39, § 1001, 93 Stat. 144, 305 ("A protest by a surety which has an unsatisfied legal claim under its bond *may be filed* within 90 days from the date of mailing of notice of demand for payment against its bond" (emphasis added)). In extending the opportunity for a surety to file a protest, Congress did not strip sureties of their ability to file such protests immediately after liquidation. Rather, "[t]his amendment ... reflected

38

Congressional concern with the frequency with which sureties did not receive notice of their principal's failure to pay duties until after the time for filing a protest had expired." *See United States v. Bavarian Motors, Inc.*, 1982 WL 1033446, at *2 (Ct. Int'l Trade Aug. 19, 1982) (citing S. Rep. No. 96-249, at 254 (1979)).

Finally, the Government argues that demand must start the statute of limitations running because a separate interest provision, 19 U.S.C. § 580, begins to run when the Customs makes a demand. Gov't Br. 14. This is no reason to upend the statutory scheme. If Customs wants to collect Section 580 interest, it should timely issue demands.

**2.** It is, in fact, the Government's position that would upend the statutory and regulatory scheme, permitting it to "postpone unilaterally and indefinitely the running of the statute of limitations." *Commodities Exp.*, 972 F.2d at 1271. Congress specifically designed a deemed liquidation scheme that did not require any action by Customs for an importer's liability to finalize. *See* 19 U.S.C. § 1504(d). "The primary purpose of section 1504," this Court explained, is "to increase certainty in the customs process for importers, surety companies, and other third parties with a potential liability relating to a customs transaction." *Int'l*

*Trading Co. v. United States*, 281 F.3d 1268, 1272 (Fed. Cir. 2002) (quotation marks omitted). In other words, the law "was designed to eliminate unanticipated requests for additional duties coming years after the original entry." *United States v. Cherry Hill Textiles, Inc.*, 112 F.3d 1550, 1559 (Fed. Cir. 1997) (quotation marks omitted). And the effect of this law is "to remove the government's unilateral ability to extend indefinitely the time for liquidating entries." *Int'l Trading Co. v. United States*, 412 F.3d 1303, 1310 (Fed. Cir. 2005). The Government's position now that it *can* still extend indefinitely the time to recover these duties not only conflicts with the statute's text, but also its scheme and purpose.

**3.** The Government's argument that a demand is a condition precedent to suit likewise defies Customs' own past practice and statements. Start with the language of the demand itself. The demand is simply "a notice of the amount of the debt and notice of the statutorily directed thirty-day grace period before interest begins to run." *AHAC*, 653 F. Supp. 3d at 1290 n.20. "That Customs understands the bill as nothing more than a notice of the debt can be seen from the wording of the bills that it sent to [the importers:] … This bill is a notice of debt *currently owed* to [Customs]. In other words, Customs has always

believed it was 'collecting' a debt already incurred." *Id.* (emphasis in original) (quotation marks omitted).

Further, "a brief look at the regulations Customs has promulgated in [19 C.F.R.] § 24.3a confirms that Customs has never treated the bill as a prerequisite, or condition precedent, to the creation of a debt. They are nothing more than instructions, i.e., ministerial procedures for the issuing of bills and receipts." *Id.*

The Government's past litigation practice confirms that the demand is irrelevant to the accrual of a cause of action. In at least four cases, the Government did not issue a bill before seeking to collect duties against importers under 19 U.S.C. § 1505(b). In *Maple Leaf Marketing, Inc. v. United States*, No. 20-03839 (Ct. Int'l Trade Jan. 20, 2023), the importer filed an action under 28 U.S.C. § 1581(a) challenging Customs' denial of its protest. The Government then asserted a counterclaim under 28 U.S.C. § 1582, the same jurisdictional statute alleged in this case, challenging Customs' own classification determination in favor of a classification that resulted in a higher rate of duty and, in the process, sought an order compelling the importer to pay additional duties. Nothing in the counterclaim alleged that Customs first sent the importer

a bill. *See generally* Defendant's Answer and Counterclaim, *Maple Leaf Marketing, Inc.*, No. 20-03839, Dkt. 21. The Government has done the same in other cases. *See, e.g.*, *See generally* Defendant's Answer and Counterclaim, *Second Nature Designs Ltd. v. United States*, No. 18-00131 (Ct. Int'l Trade Feb. 14, 2023), Dkt. 29 (same); *Cyber Power Sys. (USA) Inc. v. United States*, 586 F. Supp. 3d 1325, 1330-34 (Ct. Int'l Trade 2022) (denying the Government's motion to amend its complaint to add a similar counterclaim for failure to state a claim upon which relief can be granted and re-denominating the counterclaim as an affirmative defense); *Second Nature Designs, Ltd. v. United States*, 586 F. Supp. 3d 1334, 1338, 1342 (Ct. Int'l Trade 2022) (same).

The Government's representations not only to the Trade Court but also to industry confirmed that it has never previously believed that a demand is a prerequisite to filing suit. In *United States v. American Home Assurance Co.*, 35 C.I.T. 585, 588 (2011), the Government "agree[d] that the statute of limitations on the Government's claims runs from the date of liquidation." That position was correct then and remains correct now.

At the time the Government sued Aegis in 2022, the 6-year statute of limitation had long expired. This Court should reject the Government's argument that the statute of limitations waits to run until issuance of a demand.

## II. The Trade Court Correctly Held that an Implied Duty of Reasonableness Binds Customs.

The Trade Court granted summary judgment against Customs for the additional reason that the Government's 8-year delay in issuing its demand to Aegis violated the implied duty of reasonableness. Appx9. The court explained that, under the common law and under this Court's precedent, an implied duty of reasonableness binds the parties and requires the Government to issue its demand in a reasonable time. Appx7-8. The court then analyzed the Government's conduct here—including the nearly 8-year delay in issuing the first demand and the ten-year delay in issuing the second demand—and held that it violated that duty. Appx9.

In its brief, the Government challenges only the first holding. Gov't Br. 25-30. According to the Government, there is no duty to issue a demand within a reasonable time, and it may "infinite[ly] delay" issuing a demand. Gov't Br. 30. The Government does not dispute, however, that

if there is a duty to issue the demand in a reasonable time, its unexplained 8-year delay violated that duty here. That argument is thus waived. *See, e.g.*, *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 833 (Fed. Cir. 2010) ("This court has consistently held that a party waives an argument not raised in its opening brief.").

**A.     This Court and other courts have unanimously held that an implied reasonableness requirement applies to government contracts.**

Customs bonds are contracts. Like other contracts, customs bonds contain implied duties, including the implied duty of good faith and fair dealing, which "requires a party to not interfere with another party's rights under the contract." *See Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 828 (Fed. Cir. 2010); *see also* Restatement (Second) of Contracts § 205 cmt. *d* (stating potential breaches of the implied duty of good faith and fair dealing include "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance").

These implied contractual duties apply when the United States contracts with private parties. *Commodities Exp.*, 972 F.2d at 1271 n.3;

*Metcalf Constr. Co. v. United States*, 742 F.3d 984, 990 (Fed. Cir. 2014). The Government does not dispute this. And, in fact, the duty for a government agency to act reasonably lies not only in the implied duties of the contract but also in federal law. *See* 5 U.S.C. § 706(2)(A); *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021) (explaining that, at its, core, the Administrative Procedure Act standard requires "that agency action be reasonable"); *Salazar v. King*, 822 F.3d 61, 75-76 (2d Cir. 2016) (finding that an agency's collection action could be challenged under the arbitrary and capricious standard as final agency action).

The duty of good faith and fair dealing encompasses a requirement that a party issue a demand in a reasonable time. "[A] party is not at liberty to stave off operation of the statute [of limitations] inordinately by failing to make demand," and "the time for demand is ordinarily a reasonable time." *Nyhus*, 466 F.2d at 452-53. To the extent that the Government's cause of action does not accrue until it issues a demand, the Government has an obligation to issue that demand in a reasonable time. Indeed, in other litigation, the government has conceded that there is an implied reasonableness requirement in Customs bonds. November 15, 2023 Hearing Tr. at 57:16-20, *Aegis I*, Dkt. 128 (The Court: "So just

to clarify, the Government does not dispute that the implied reasonableness contractual term applies to it. Its dispute is what the time period we're looking at [is] to determine whether it is reasonable." Government Counsel: "Right.").

This Court's case law confirms that a reasonable time requirement applies in contracts between the Government and private parties where there is no express time requirement. In *Commodities Export*, for example, this Court reversed the Trade Court's conclusion that the Government's right of action accrued only after it followed its own regulations because Customs "ha[d] unilaterally adopted regulations which delay filing of actions." 972 F.2d at 1271. "This [C]ourt cannot … permit a single party"—even if that party is the Government—"to postpone unilaterally and indefinitely the running of the statute of limitations." *Id.*

The Trade Court correctly applied this precedent to hold that "Customs must issue the demand in a reasonable time." Appx8. Relying on this Court's decisions in *Precision Pine* and *Metcalf*, it explained that bonds are governed by the implied duty of good faith and fair dealing and that this duty requires a party to refrain from interfering with another

46

party's contractual rights. Appx7 (citing *Precision Pine*, 596 F.3d at 828 & *Metcalf*, 742 F.3d at 990). Accordingly, where Customs fails to make a timely demand, it also "fail[s] to act diligently and allow[s] the contract to fall into no man's land where the parties' expectations could be thwarted easily." Appx7. Customs is not "'at liberty to stave off operation of the statute of limitations inordinately by failing to make demand' and 'the time for demand is ordinarily a reasonable time.'" Appx8 (alteration adopted) (quoting *Nyhus*, 466 F.2d at 452-53).

Indeed, the Trade Court has had three opportunities to address this exact issue. On all three occasions, including in this decision below, the Trade Court concluded that Customs bonds contain an implied requirement that Customs issue a demand within a reasonable time. Appx9; *see also AHAC*, 653 F. Supp. 3d at 1293; *Aegis I*, 693 F. Supp. 3d at 1338. "The requirement is especially important in adhesion contracts — like customs bonds — where the parties have no opportunity to negotiate a time limit for demand." *Aegis I*, 693 F. Supp. 3d at 1338.

The Trade Court's reasoning is consistent with appellate decisions across the United States. The Second Circuit, for example, has explained that "the government should not be able to postpone the running of the

47

statute of limitations by deferring the demand." *United States v. Gordon*, 78 F.3d 781, 785 (2d Cir. 1996). Recognizing that a reasonableness rule applies to contracts between private parties, the court explained that "it seems only fair to bar the government from forestalling commencement of the limitation period by inordinately failing to make demand for payment necessary to allow [its] cause of action to accrue." *Id.* at 787 (quotation marks omitted). Indeed, the "the policy underlying statutes of limitations generally—that there may be, at some definitely ascertainable period, an end to litigation … supports a reasonable time requirement." *Id.* (quotation marks omitted). Although the court ultimately declined to find for the defendants on the reasonableness issue because they had failed to argue it, the court made clear that "[c]ourts should not have to resolve stale claims premised on events that occurred decades ago." *Id.*

Similarly, in *United States v. Vanornum*, the Small Business Administration ("SBA") sued to obtain payment from a guarantor after he co-signed two loans, backed by SBA, that later went into default. 912 F.2d 1023, 1027 n.5 (8th Cir. 1990). The Eighth Circuit explained that it was "troubled by the length of time"—6 years—"between the SBA's

written demand and its decision to file a complaint" against the defendant, and cautioned that the "SBA would be precluded from staving off operation of the statute by failing to make demand." *Id.* (cleaned up). It declined to rule on this ground because defendant had not argued it. *Id.*

The Ninth Circuit has also warned that the Government is "precluded from forestalling commencement of the limitation period by inordinately failing to make the demand for payment necessary to allow the [Government]'s cause of action to accrue." *United States v. Garan*, 12 F.3d 858, 860 (9th Cir. 1993). And in *United States v. First City Capital Corp.*, the Fifth Circuit rejected the SBA's lawsuit to recover on a loan guarantee because the demand was made 6 years after the maturity date of the underlying debt. 53 F.3d 112, 116 (5th Cir. 1995). "Because the demand was not made within this reasonable period of time, any action on the guarantee agreement is barred[.]" *Id.* (applying Texas law).

In sum, where a contract requires a party to perform an act but sets no time for performance, the performing party must act within a reasonable time. This principle applies with full force to the Government. This Court, the Trade Court, and multiple circuits have all reached the

same conclusion—the Government cannot forestall the statute of limitations by indefinitely deferring a bill or demand it alone controls. The Court should affirm the Trade Court's conclusion that an implied duty of reasonableness binds Customs, requiring it to issue the demand within a reasonable time, and that Customs breached that duty here.

**B. The Government's novel argument that there is no duty to issue its demand in a reasonable time conflicts with its own authority and past positions.**

The Government asks this Court to reverse the lower court's reasonableness holding based on three arguments. All are flawed.

***First***, the Government argues that breach of an implied duty requires intentional misconduct not just failure to act within a reasonable time. Invoking Williston on Contracts, the Government contends that "merely negligent conduct is not sufficient to constitute a breach of the covenant of good faith and fair dealing." Gov't Br. 25-27 (quoting 23 Williston on Contracts § 63.22).

But Williston on Contracts, in fact, recognizes that contracting parties are bound "to exercise due diligence" in performing their obligations. 23 Williston on Contracts § 63:24. Section 63:24 of Williston on Contracts further explains that "[i]n every contract, there is [an]

50

implied a promise or duty to perform with reasonable expediency the thing agreed to be done; a failure to do so is a breach of contract." *Id.*; *see also United States v. Speed*, 75 U.S. (8 Wall) 77, 84 (1868) ("Where … the obligation of plaintiffs requires an expenditure of a large sum in preparation to enable them to perform it, and a continuous readiness to perform, the law implies a duty of the other party [including the government] to do whatever is necessary for him to do to enable plaintiffs to comply with their promise or covenant."). The implied duty is precisely "one not to cause performance to be delayed … by its negligence." *See United States v. Croft-Mullins Elec. Co.*, 333 F.2d 772, 775 n.5 (5th Cir. 1964) (quotation marks omitted).

Indeed, this Court has already rejected the Government's argument that it can be held liable for a breach of good faith and fair dealing only when the plaintiff shows that the Government "*specifically designed* to reappropriate the benefits [that] the other party expected to obtain from the transaction." *Metcalf*, 742 F.3d at 992 (emphasis added) (quotation marks omitted). In *Metcalf*, a construction contractor sued the United States after entering a contract to build military housing in Hawaii. *Id.* at 987. The contractor alleged that the Navy had breached that duty after

the contractor discovered that the construction site's soil was expanding and that the soil had more of a chemical contaminant than originally believed. *Id.* at 989. Both conditions could substantially increase costs and delays. *Id.* at 988-89. The trial court had determined that there was no breach of the duty because a "a breach of the duty of good faith and fair dealing claim against the Government can *only* be established by a showing that it specifically designed to reappropriate the benefits [that] the other party expected to obtain from the transaction, thereby abrogating the government's obligations under the contract." *Id.* at 992 (emphasis in original) (quotation marks omitted). This Court rejected the conclusion that "incompetence … do[es] not trigger the duty of good faith and fair dealing, unless the Government specifically targeted action to obtain the benefit of the contract or where Government actions were undertaken for the purpose of delaying or hampering the performance of the contract." *Id.* at 992-93 (quotation marks omitted). To establish breach, all that is required is that the Government "interfere[d] with the other party's *performance*" and "destroy[ed] the *reasonable expectations* of the other party regarding the *fruits of the contract*." *Id.* at 991

(emphasis in original) (quotation marks omitted). It does not matter whether that interference arose from negligent or willful conduct.

The Restatement (Second) of Contracts § 205 cmt. *d* is in accord with this Court's precedent. It identifies "lack of diligence and slacking off" and "failure to cooperate in the other party's performance" as potential breaches of the implied duty of good faith and fair dealing. For example, relying on this language in the Restatement, the Second Circuit determined that a bank's "lack of diligence" in handling collections—including losing collections documents—for a company "destroyed the value of the contract for the company." *Bank of China v. Chan*, 937 F.2d 780, 787, 789 (2d Cir. 1991). Customs "los[ing] or mis[filing] its papers" and then not doing anything about it for nearly a decade, as Customs did here, qualifies as "lack of diligence and slacking off" or "failure to cooperate in the other party's performance." *See, e.g.*, *AHAC*, 653 F. Supp. 3d at 1281 n.11, 1295 (finding that Customs' delay was unreasonable especially because the government had claimed it "slipped through the cracks" (quotation marks omitted)); *Aegis I*, 693 F. Supp. 3d at 1333 (finding the delay was unreasonable and noting that Customs claimed

that "that, although notice was published in the Federal Register [in 2006], it only learned of the liquidation in July 2014").

**Second**, Customs appears to argue that the implied duty of good faith and fair dealing is coextensive with the express language in the contract. Customs argues, for example, that implied duties only prohibit the Government from engaging in a "bait-and-switch," and that there is no bait-and-switch here because "there is no statutory or regulatory provision imposing a time or even a reasonable time limitation on the demand." Gov't Br. 28. Customs elsewhere quotes this Court's precedent to argue that "the implied duty of good faith and fair dealing cannot expand a party's contractual duties beyond those in the express contract or create conditions inconsistent [with the] contract's provisions." Gov't Br. 14 (quoting *Dobyns v. United States*, 915 F.3d 733, 739 (Fed. Cir. 2019)).

But this Court has expressly rejected this argument as well. As the Court explained in *Dobyns*, "[a] breach of the *implied* duty of good faith and fair dealing does not require a violation of an *express* provision in the contract." *Dobyns*, 915 F.3d at 739 (quoting *Metcalf*, 742 F.3d at 994). "The government['s] … more constraining view … that there was no

breach of the implied duty because [the defendant] cannot identify a contract provision that the [Government's actions] violated" simply "goes too far." *Metcalf*, 742 F.3d at 994 (quotation marks omitted). "[N]one of [this Court's cases] holds that the implied duty requires a breach of an express contractual duty." *Id.*

The Government's proposed analysis gets the inquiry backwards: the duty to act in a reasonable time applies unless there is an express statutory provision saying otherwise. That's the whole point of an *implied* duty: to prevent "acts or omissions that, though not proscribed by the contract expressly, are inconsistent with the contract's purpose and deprive the other party of the contemplated value." *Id.* at 991. Customs has not identified anything in the contract showing that the parties or Congress intended to abrogate the general implied duty of reasonableness with respect to customs bonds. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) ("[C]ourts may take it as given that Congress has legislated with an expectation" that common law principles will apply.); *Metcalf*, 742 F.3d at 990 ("'Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.' … We have long applied those principles

to contracts with the federal government." (quoting Restatement (Second) of Contracts § 205 (1981)). Where, as here, nothing in the contract expressly abrogates the implied duty to perform in a reasonable time, that duty binds the Government.

***Third***, Customs contends that Aegis could not have reasonably expected a demand payment within a certain time. Gov't Br. 27; *see also* Gov't Br. 26, 30 (invoking the mutual expectations of the parties and background customs law). But Customs' only argument to support this position is that "the bond contract contains no express condition that demand be made within a certain time after liquidation." Gov't Br. 27. Again, this Court has rejected the Government's argument that a breach of the implied duty requires breach of an express statutory provision.

In fact, the evidence is overwhelming that the parties did expect that Customs would act in a timely manner. The Government previously expressed its belief that it had only 6 years from liquidation to sue to recover on unpaid duties. *Am. Home Assurance Co.*, 35 C.I.T. at 588 (the Government "agree[d] that the statute of limitations on the Government's claims runs from the date of liquidation"). In November 2023, the Government conceded at argument that an "implied

reasonableness contractual term" applies to the bonds. November 15, 2023 Hearing Tr. at 57:16-20, *Aegis I*, Dkt. 128. And for decades, Customs has recognized that "[t]he primary purpose of Customs debt resolution action shall be to collect, as soon and efficiently as possible, all overdue delinquent debt rightfully owed Customs or to collect as much [of] the debt that is beneficially possible." Appx281; *see also* Appx86-87 (describing prompt collection as "a cardinal rule of debt collection"). Before this series of litigation, Aegis is unaware of the Government ever taking the position that it could infinitely delay recovery on customs duties from sureties based on when it mails a demand. Appx846-847 ¶ 10. And the Trade Court has uniformly rejected the Government's argument in recent cases. Appx9; *AHAC*, 653 F. Supp. 3d at 1293; *Aegis I*, 693 F. Supp. 3d at 1338-39.

For the last 40 years, the surety industry has operated with the understanding that Customs has a duty to issue a demand within a reasonable time, rather than sit on hands to forestall the running of the statute of limitations. Appx846-847 ¶ 10. This understanding was based on the plain reading of the statutes mandating that a cause of action accrues after deemed liquidation, and the Customs policies stating that

Customs must promptly issue a demand. This understanding has been confirmed by the Trade Court multiple times, including in this case. *See, e.g.*, Appx9; *AHAC*, 653 F. Supp. 3d at 1293; *Aegis I*, 693 F. Supp. 3d at 1338-39. And, until recently, this understanding has gone uncontradicted by Customs. Appx846-847 ¶ 10. Customs did not give the surety industry any notice of its policy shift to base the running of the statute of limitations from the date of liquidation to the date of its billing. Appx846-847 ¶ 10. It strains credulity to argue that the surety industry had no expectation of prompt demand.

Aegis had an expectation—based on well-established principles of contract law, this Court's precedent, and Customs' own statements—that the Government would act reasonably and submit a demand in a reasonable time. The Government's conceded 8-year delay in issuing a demand violates that implied duty of reasonableness. The Trade Court has repeatedly reached the right result on this question. Appx9; *AHAC*, 653 F. Supp. 3d at 1295; *Aegis I*, 693 F. Supp. 3d at 1339-40. This Court should affirm.

## III. The Impairment of Suretyship Doctrine Discharges Aegis's Obligations Under the Bond.

Customs' conduct has impaired Aegis's suretyship status by fundamentally altering its risk of loss. Aegis's suretyship status makes it a secondary obligor, giving it "the right to have the principal obligor," the importer Presstek, "bear the cost of performance owed to the obligee," which is Customs. Restatement (Third) of Suretyship & Guaranty § 37 cmt. *a*. "If the obligee acts to increase the secondary obligor's risk of loss by increasing its potential cost of performance or decreasing its potential ability to cause the principal obligor to bear the cost of performance, the secondary obligor is discharged" from its bond obligations. *United States v. Great Am. Ins. Co.*, 738 F.3d 1320, 1332 (Fed. Cir. 2013) (quoting Restatement (Third) of Suretyship & Guaranty § 37). This is called the "impairment of suretyship" defense. *Id.* Here, Customs' decision to upend its settled practice and assert an infinite timeframe in which to recover on bonds fundamentally altered Aegis's risk of loss and decreased its potential ability to seek recourse for that loss. The Trade Court did not address this argument. *See* Appx13 n.10. But "[t]his court may affirm on any basis supported by the record." *Safeguard Base Operations, LLC v. United States*, 989 F.3d 1326, 1348 (Fed. Cir. 2021).

### A. Customs fundamentally altered the risks imposed on Aegis through its delay in seeking payment.

The obligee (here, the Government) fundamentally alters the risks imposed on the secondary obligor (here, Aegis, the surety) when "the resulting situation is no longer that for which the secondary obligor bargained." Restatement (Third) of Suretyship & Guaranty § 37 cmt. *a*. The Government's conduct must have "materially modified" the contract to which the surety agreed by "substantially increasing its risk." *See Great Am. Ins. Co.*, 738 F.3d at 1332 (citing *Lumbermens Mut. Cas. Co. v. United States*, 654 F.3d 1305, 1313-14 (Fed. Cir. 2011) & *United States v. King*, 349 F.3d 964, 967 (7th Cir. 2003)).

Aegis agreed to a bond that would be in effect for no longer than 6 years after liquidation. *Supra* pp. 22-43. The Government has admitted it also believed the 6-year statute of limitations to run from liquidation in previous litigation. *See Am. Home Assurance Co.*, 35 C.I.T. at 588 (stating that Government had "agree[d] that the statute of limitations on the Government's claims runs from the date of liquidation"). This was the surety industry's understanding as well, Appx846-847 ¶ 10, informed in part by decisions of the Trade Court, *see, e.g.*, *United States v. Am. Home Assurance Co.*, 151 F. Supp. 3d 1328, 1342-43 (Ct. Int'l Trade), *as*

*amended* (Mar. 15, 2016) (identifying deemed liquidation as the event giving rise to the accrual of the United States' cause of action); *United States v. Int'l Fid. Ins. Co.*, 273 F. Supp. 3d 1170, 1177 (Ct. Int'l Trade 2017) ("When liquidation occurs by operation of law, the six-year statute of limitations commences on the date of the deemed liquidation"); *United States v. Great Am. Ins. Co.*, 791 F. Supp. 2d 1337, 1367-68 (Ct. Int'l Trade 2011) ("The Government's cause of action accrued six months after publication of the *Notice of Rescission* when the [importer's] Entries [were] deemed liquidated [by operation of law] and the Government's right to collect additional duties attached.").

Aegis also agreed that an implied duty to act within a reasonable time would fill in any gaps in the bond contract. When Aegis issued and Customs approved the bond, Aegis understood the Government was bound to an implied duty of reasonableness based on black letter contract law and this Court's precedent. *Supra* pp. 43-58. Indeed, that has long been Customs' own understanding of the bonds' terms. *See, e.g.*, November 15, 2023 Hearing Tr. at 57:16-20, *Aegis I*, Dkt. 128 (The Court: "So just to clarify, the Government does not dispute that the implied reasonableness contractual term applies to it. Its dispute is what the time

61

period we're looking at [is] to determine whether it is reasonable." Government Counsel: "Right."); *cf.* Appx86-87 (describing prompt collection as "a cardinal rule of debt collection").

Aegis did not expect or bargain for the bond being in effect "infinite[ly]." Gov't Br. 30. By now arguing that nothing constrains the time for it to issue a demand or file a lawsuit, Customs has unilaterally designed a new contract. The about-face on the 6-year statute of limitations and the rejection of the implied duty of reasonableness have "materially modified" the bond by "substantially increasing its risk." *See Great Am. Ins. Co.*, 738 F.3d at 1332. Under Customs' position, the importer now has the financial backing of the surety in perpetuity; in the past, the importer became solely responsible for the payment of duties after the expiration of the 6-year statute of limitations against the surety, as no statute of limitations protects the importer. *See Ataka Am.*, 826 F. Supp. at 497-98. This sort of unilateral altering of Aegis's risk is exactly what the impairment of suretyship defense is designed to address. Aegis's obligation under the bond should be discharged. *See* Restatement (Third) of Suretyship & Guaranty § 37 cmt. *a* ("When the impairment fundamentally alters the risks imposed on the secondary obligor, … the

secondary obligor is discharged from its obligation."). And Customs should pursue any duties owed from the importer.

### B. Customs impaired Aegis's right of recourse.

Customs additionally impaired Aegis's right of recourse in two different ways. First, Customs' more-than seven-year delay in issuing a bill to Presstek decreased Aegis's potential ability to cause Presstek to bear the cost of performance. Although Presstek actively engaged with Commerce and Customs after entry of its products when it sought new shipper review, *see* 19 U.S.C. § 1675(a)(2)(B)(iii) (1994), neither Customs nor Aegis has been able to secure engagement with Presstek after Customs finally issued a bill to Presstek in November 2016. *See* Appx5. This is impairment of suretyship. *See* Restatement (Third) of Suretyship & Guaranty § 37 cmts. *a* & *d* (impairment of right of recourse occurs when the "act … harm(s) … the secondary obligor").

Second, Customs' lengthy delay also impaired Aegis's right to recover under its reinsurance treaty. Where an obligee's conduct impairs the "surety's ability to be made whole … if the surety is later called upon to discharge the underlying obligation," the obligee has impaired the surety's right of recourse. *See Pennsylvania Nat'l Mut. Cas. Ins. Co. v.*

*City of Pine Bluff*, 354 F.3d 945, 953 (8th Cir. 2004). In *Pennsylvania National Mutual Casualty Insurance Co.*, the City of Pine Bluff hired a general contractor, who then hired subcontractors, to clear storm debris. *Id.* at 949. Penn National underwrote a bond for the project. *Id.* The City ultimately terminated the general contractor's contract after disagreements arose but failed to notify Penn National for months. *Id.* There was nearly $3 million in claims for unpaid subcontractors, and Penn National asked the City not to release any funds without notifying it, asserting a potential right of subrogation on the funds. *Id.* The City did not listen and settled with the general contractor anyway. *Id.* Penn National sued the City, arguing that the City's actions had impaired its subrogation rights. *Id.*

The Eighth Circuit agreed, explaining that "faced with conflicting claims by the general contractor, the unpaid subcontractors, and the surety, the City decided to pay [the general contractor] despite premature termination of the contract, knowledge of [the general contractor's] default, and notice from the surety to preserve remaining security." *Id.* at 953. "The City incorrectly chose [the general contractor] over the superior equitable claims of the unpaid subcontractors whose work

earned the contract funds in the first place." *Id.* "Because Penn National was independently obligated to satisfy subcontractor claims under the payment bond, the City's decision to settle with [the general contractor] increased Penn National's risk and impaired its right to reimbursement from remaining security. The City is accordingly liable for Penn National's actual loss." *Id.* at 953-54 (citation omitted).

Similarly, Customs conduct here impaired its right to reimbursement. Aegis arranged to pass through 100 percent of its liability on the bond to its reinsurer, Lincoln General. The reinsurance treaty covered claims for less than $1 million and litigation defense costs from disputes involving Customs' claims made on bonds in the programs. Appx416; Appx429; Appx424-425. After the 6-year statute of limitations expired, Lincoln General was liquidated by the Commonwealth Court of Pennsylvania. Appx760-767. Until Lincoln General dissolved, it would have been the entity liable for any claims against the bond. Appx416. Because Customs did not issue a demand to Aegis until February 2017—after Lincoln General became insolvent—Aegis was deprived of its recourse against its reinsurer.

Further, Customs' conduct also impaired Aegis's ability to recover from Lincoln General's parent company, Kingsway. Aegis was forced to settle its claim against Kingsway under their indemnification and hold harmless agreements because of the costs, delays and uncertainties of that litigation. The result was that Aegis's reimbursement from Kingsway is limited to 60 percent of Defendant's losses, capped at $4.8 million, and limited to only those losses submitted by Aegis through the later of June 30, 2025, or five years after Kingsway fully funds the escrow account. Appx778-779.

Customs' long delayed efforts thus not only conflict with its contractual obligations and with Aegis's (and the public's) reasonable understanding of the contract's terms, it also impairs Aegis's right of recourse and alters the risks it faces. Under insurance law, that is improper. The entity that faces the risks of undue delay and inaction is the entity engaging in that unreasonable conduct. Here, that is Customs. Aegis should not face altered risk and lose its right of recourse because of Customs' failure to act appropriately. *See* Restatement (Third) of Suretyship & Guaranty § 37 cmt. *a*. For this reason too, the Trade Court's judgment should be affirmed.

# CONCLUSION

For the reasons set forth above, this Court should affirm.

Respectfully submitted,

*/s/ Jeffrey M. Telep*

| | |
|---|---|
| Gilbert Lee Sandler | Jeffrey M. Telep |
| SANDLER, TRAVIS & | Amy R. Upshaw |
| ROSENBERG, P.A. | K. Paige Tenkhoff |
| 286 Madison Avenue | KING & SPALDING LLP |
| Suite 1200 | 1700 Pennsylvania Avenue NW |
| New York, NY 10017 | Suite 900 |
| (305) 894-1000 | Washington, DC 20006 |
| | (202) 737-0500 |
| | jtelep@kslaw.com |

*Counsel for Defendant-Appellee*

April 22, 2026

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), undersigned counsel certifies that this brief:

(i) complies with the type-volume limitation of Federal Circuit Rule 32(a) because it contains 13,574 words, including footnotes and excluding the parts of the brief exempted by Federal Circuit Rule 32(b) and Federal Rule of Appellate Procedure 32(f); and

(ii) complies with the typeface and style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because this document has been prepared using Microsoft Office Word 365 ProPlus and is set in 14-point Century Schoolbook font.

Date: April 22, 2026

*/s/ Jeffrey M. Telep*
Jeffrey M. Telep

*Counsel for Defendant-Appellee*

# ADDENDUM

**19 U.S.C. § 1675(a)(2)(B)(iii) (1994)\***

**(iii) Posting bond or security.**

The administering authority shall, at the time a review under this subparagraph is initiated, direct the Customs Service to allow, at the option of the importer, the posting, until the completion of the review, of a bond or security in lieu of a cash deposit for each entry of the subject merchandise.

**19 C.F.R. § 351.214(e) (1997)\*\***

**(e) Suspension of liquidation; posting bond or security.**

When the Secretary initiates a new shipper review under this section, the Secretary will direct the Customs Service to suspend liquidation of any unliquidated entries of the subject merchandise from the relevant exporter or producer, and to allow, at the option of the importer, the posting, until the completion of the review, of a bond or security in lieu of a cash deposit for each entry of the subject merchandise.

---

\* Uruguay Round Agreements Act, Pub. L. No. 103-465, § 751, 108 Stat 4809, 4859 (1994).

\*\* Antidumping Duties; Countervailing Duties, 62 Fed. Reg. 27296, 27395 (May 19, 1997).